# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

Nancy Goodman and Jacqueline Peiffer,

            Plaintiffs,

       v.

JP Morgan Investment Management, Inc.,

          Defendant.

Civil No. 2:14 CV-414

Judge Frost

Magistrate Judge King

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), defendant JP Morgan Investment Management, Inc. respectfully moves the Court to dismiss the complaint for failure to state a claim upon which relief can be granted.  The grounds supporting this motion are set forth in the attached memorandum.

Respectfully submitted,

Of counsel:

/s/ Steven W. Tigges
Steven W. Tigges (0019288), Trial Attorney
John W. Zeiger (0010707)
Bradley T. Ferrell (0070965)
ZEIGER, TIGGES & LITTLE LLP
41 South High Street
3500 Huntington Center
Columbus, OH 43215
Tel.:    (614) 365-9900
Fax:    (614) 365-7900
Email: tigges@litohio.com
       zeiger@litohio.com
       ferrel@litohio.com

Attorneys for Defendant JP Morgan Investment Management, Inc.

Mark Holland
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.:    (212) 813-8800
Fax:    (646) 558-4118
Email: mholland@goodwinprocter.com

Michael K. Isenman
David I. Freeburg
GOODWIN PROCTER LLP
901 New York Ave NW
Washington, DC 20001
Tel.:    (202) 346-4000
Fax:    (202) 204-7248
Email: misenman@goodwinprocter.com
       dfreeburg@goodwinprocter.com

## <u>MEMORANDUM IN SUPPORT</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF PLAINTIFFS' ALLEGATIONS ......................................................... 2

    The Parties and the Funds ........................................................................................ 2

    The Subadvised Funds .............................................................................................. 4

    Plaintiffs' Claims ..................................................................................................... 5

THE RELEVANT STATUTE ........................................................................................... 7

ARGUMENT .................................................................................................................... 9

I.      THE STANDARD OF REVIEW ........................................................................ 9

II.     THE COMPLAINT FAILS TO PLEAD SUFFICIENT FACTS TO STATE A
       CLAIM UNDER SECTION 36(b). .................................................................. 10

    A.    A Lack of Fee Parity Is Insufficient to State a Claim Under § 36(b) ..................... 11

    B.    The Allegations Regarding Economies of Scale Are Insufficient to State a
        Claim Under § 36(b). ........................................................................................ 14

        1.    Fund Assets Decreased During the Relevant Period. ............................... 15

        2.    The Complaint Does Not Allege that JPMIM's Costs Decreased. ........... 16

    C.    Allegations Regarding the Board's Approval Process Are Insufficient to State
        a Claim Under § 36(b). ...................................................................................... 17

    D.    Section 47(b) Provides No Separate Basis for a Claim ......................................... 18

CONCLUSION ................................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
    464 F.3d 338 (2d Cir. 2006)..................................................................................................16, 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................................9, 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................................................9, 10

*Bovee v. Coopers & Lybrand C.P.A.*,
    272 F.3d 356 (6th Cir. 2001) ...................................................................................................2

*Daily Income Fund, Inc. v. Fox*,
    464 U.S. 523 (1984).....................................................................................................................8

*Davis v. Bailey*,
    2005 WL 3527286 (D. Colo. Dec. 22, 2005)...........................................................................19

*Gallus v. Ameriprise Fin., Inc.*,
    675 F.3d 1173 (8th Cir. 2012) ...................................................................................................18

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,
    694 F.2d 923 (1982), *cert denied*, 461 U.S. 906 (1983) ........................................................8

*Greenberg v. Life Ins. Co. of Va.*,
    177 F.3d 507 (6th Cir. 1999) ...................................................................................................2

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) ...................................................................................................14

*Highland Crusader Offshore Partners, L.P. v. Motient Corp.*,
    2007 WL 6926718 (W.D. Tex. Jan. 23, 2007) .......................................................................19

*Hoffman v. UBS-AG*,
    591 F. Supp. 2d 522 (S.D.N.Y. 2008)......................................................................................12

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.*,
    2006 WL 1520222 (S.D.N.Y. May 31, 2006) .................................................................9, 16

*In re Evangelist*,
    760 F.2d 27 (1st Cir. 1985)......................................................................................................7

*In re Evergreen Mut. Funds Fee Litig.*,
    240 F.R.D. 115 (S.D.N.Y. 2007) .............................................................................................16

*In re Gartenberg*,
   636 F.2d 16 (2d Cir. 1980), *cert. denied*, 451 U.S. 910 (9181) ......................................7, 8, 10

*In re Goldman Sachs Mut. Funds*,
   2006 WL 126772 (S.D.N.Y. Jan. 17, 2006) ........................................................................16

*In re Honda of America Mfg., Inc. ERISA Fee Litig.*,
   661 F. Supp. 2d 861 (S.D. Ohio 2009) (Frost, J.) ..............................................................9, 14

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
   528 F. Supp. 2d 332 (S.D.N.Y. 2007),
   *modified on other grounds*, 425 F. App'x 25 (2d Cir. 2011) ...........................................16, 17

*In re Scudder Mut. Funds Fee Litig.*,
   2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007) ......................................................................15

*Jacobs v. Bremner*,
   378 F. Supp. 2d 861 (N.D. Ill. 2005) ...................................................................................19

*Jones v. Harris Assoc. L.P.*,
   559 U.S. 335 (2010) ...................................................................................................... passim

*Krinsk v. Fund Asset Mgmt., Inc.*,
   875 F.2d 404 (2d Cir. 1989) .................................................................................8, 13, 14, 15

*Migdal v. Rowe Price-Fleming Int'l, Inc.*,
   2000 WL 350400 (D. Md. 2000),
   *aff'd*, 248 F.3d 321 (4th Cir. 2001) .....................................................................................13

*Migdal v. Rowe Price-Fleming Int'l, Inc.*,
   248 F.3d 321 (4th Cir. 2001) ...........................................................................................9, 17

*Mintz v. Baron*,
   2009 WL 735140 (S.D.N.Y. Mar. 20, 2009) ......................................................................16

*Mutchka v. Harris*,
   373 F. Supp. 2d 1021 (C.D. Cal. 2005) ...............................................................................19

*Santomenno v. John Hancock Life Ins. Co.*,
   677 F.3d 178 (3d Cir. 2012) .................................................................................................19

*Sivolella v. Axa Equitable Funds Mgmt., LLC*,
   2013 WL 4096239 (D.N.J. July 3, 2013) ..............................................................................7

*Stegall v. Ladner*,
   394 F. Supp. 2d 358 (D. Mass 2005) ...................................................................................19

*Turner v. Davis Select Advisers LP.,*
  No. 08-CV-421-TUC-AWT, slip op. (D. Ariz. June 1, 2011) .................................................9

**STATUTES**

Investment Company Act of 1940, as amended, 15 U.S.C. §§ 80a-1 et seq.

Section 2(a)(19)(B), 15 U.S.C. § 80a-2(a)(19)(B) ............................................................3

Section 36(b), 15 U.S.C. § 80a–35(b) ........................................................... passim

Section 47, 15 U.S.C. § 80a-46 ...........................................................7, 18, 19

**COURT RULES**

Fed. R. Civ. P. 8(a)(2) ............................................................................................9

Fed. R. Civ. P. 12(b)(6) ........................................................................................2, 9

<u>**PRELIMINARY STATEMENT**</u>

Plaintiffs Nancy Goodman and Jacqueline Peiffer allege that they own shares in three mutual funds (the "Funds") for which defendant JP Morgan Investment Management, Inc. ("JPMIM") serves as the investment adviser.  Plaintiffs allege that JPMIM has violated Section 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a–35(b), by charging the Funds "excessive fees" for these investment advisory services.  The Complaint fails to allege sufficient facts or a cogent legal theory to support Plaintiffs' claims.

To state a claim under Section 36(b), a complaint must plead facts showing that the challenged fee "is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining."  *Jones v. Harris Assoc. L.P.*, 559 U.S. 335, 346 (2010).  The Complaint here does not plead any facts about the nature, quality, or cost of the services JPMIM provides to the Funds, let alone sufficient facts that, if true, would allow this Court to determine that those services are not worth the fees JPMIM charges.

Instead, Plaintiffs complain that (i) the fees JPMIM charges the Funds as an investment adviser are higher than the fees JPMIM charges other financial institutions when serving as a "subadviser" to their mutual funds and (ii) JPMIM has not shared purported "economies of scale" with the Funds.  These allegations are not enough to state a claim under Section 36(b).

Comparisons of the fees that JPMIM charges financial institutions to serve as a *subadviser* with the fees it charges the Funds to serve as the *investment adviser* are inapt.  The two roles are fundamentally different.  And alleging that JPMIM provides similar services to other clients for less does not mean that the services JPMIM provides the Funds are not worth the fees it charges. These allegations come nowhere close to establishing that JPMIM's fees are "so disproportionately large that [they] bear[] no reasonable relationship to the services rendered

1

and could not have been the product of arm's length bargaining." *Jones*, 559 U.S. at 346. As the Supreme Court explained in *Jones,* simply alleging that one fee is higher than another does not make the higher fee excessive, because Section 36(b) "does not necessarily ensure *fee parity* between mutual funds and institutional clients." *Id*. at 350 (emphasis added).

Plaintiffs' allegations regarding a failure to share economies of scale as Fund assets increase fare no better. Plaintiffs do not allege any facts about JPMIM's costs to provide investment advisory services to the Funds, let alone facts showing how those costs changed as the size of the Funds changed. In addition, Section 36(b) only permits shareholders to challenge fees going back one year from the institution of suit, 15 U.S.C. § 80a-35(b)(3), and the Complaint concedes that rather than increasing, the Funds' assets declined during the past year.

The Complaint therefore fails to plead sufficient facts to state a plausible claim under Section 36(b). Dismissal pursuant to Rule 12(b)(6) is therefore appropriate and proper.

## STATEMENT OF PLAINTIFFS' ALLEGATIONS[1]

### The Parties and the Funds

Plaintiffs allege that they own shares of the JP Morgan Core Bond Fund (the "Core Bond Fund"), the JP Morgan High Yield Fund (the "High Yield Fund"), and the JP Morgan Short Duration Bond Fund (the "Short Duration Bond Fund") (collectively, the "Funds").[2]

The Core Bond Fund has approximately $23 billion in assets and invests primarily in "intermediate- and long-term debt securities."[3] The High Yield Fund has approximately $11

---

[1] The Statement of Plaintiffs' Allegations is based upon the allegations in the Complaint and on the documents the Complaint refers to. The Court can consider documents "referred to in the complaint" without converting a motion to dismiss into a motion for summary judgment, even if they are "not formally incorporated by reference." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999); *see also Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360-61 (6th Cir. 2001). For the Court's convenience, the Declaration of Jonathan E. Goulart ("Goulart Declaration" or "Goulart Decl."), attached as Exhibit 1 to this motion, attaches copies of documents referred to in the Complaint that are cited in this motion, each of which was publicly filed with the Securities and Exchange Commission ("SEC").

[2] Compl. ¶¶ 15-16.

2

billion in assets and invests "primarily in . . . debt securities . . . rated below investment grade or unrated."[4] The Short Duration Bond Fund has approximately $11 billion in assets and invests "in high- and medium-grade fixed income securities."[5]

The Funds are governed by a Board of Trustees (the "Board"), which is responsible for overseeing all business activities of the Funds.[6] The Board consists of thirteen Trustees, none of whom work for JPMIM or its affiliates. Twelve of the Trustees are independent, meaning they are not "interested persons" of JPMIM or the Funds under the Investment Company Act of 1940, as amended, 15 U.S.C. §§ 80a-1 *et seq.* (the "ICA").[7] *See* 15 U.S.C. § 80a-2(a)(19)(B) (defining "interested person").

The Funds, like most mutual funds, do not have their own employees or facilities.[8] Instead, the Funds retain external service providers to conduct their operations.[9] Defendant JPMIM serves as the investment adviser to the Funds pursuant to an Investment Advisory Agreement ("IAA").[10] JPMIM is a wholly-owned subsidiary of JPMorgan Chase & Co.[11]

---

[3]  JP Morgan Income Funds Prospectus for Share Classes R2, R5 & R6 (July 1, 2013) (the "Prospectus") at 10; *see* Compl. ¶¶ 32, 88. Excerpts from the Prospectus are Exhibit A to the Goulart Declaration.

[4]  Prospectus at 57; *see* Compl. ¶¶ 37, 90.

[5]  Prospectus at 5; *see* Compl. ¶¶ 42, 92.

[6]  Compl. ¶ 26.

[7]  JP Morgan Income Funds Statement of Addition Information (July 1, 2013, as supplemented March 26, 2014) (the "SAI") at Part II 68-70. The SAI "is incorporated by reference into th[e] prospectus. That means, by law, it is considered to be part of th[e] prospectus." Prospectus at 144. Excerpts from the SAI are Exhibit B to the Goulart Declaration.

[8]  Compl. ¶ 23.

[9]  Compl. ¶ 23.

[10] Compl. ¶ 28. The IAA has been amended several times. The Amended and Restated Investment Advisory Agreement dated August 12, 2004 (the "2004 IAA") is Exhibit C to the Goulart Declaration. The Amendment to Investment Advisory Agreement dated December 31, 2009 (the "2009 IAA Amendment") is Exhibit D to the Goulart Declaration. Revised Schedule A to Amended and Restated Investment Advisory Agreement dated April 30, 2013 is Exhibit E to the Goulart Declaration.

[11] Compl. ¶ 17.

**The Subadvised Funds**

The Complaint alleges that JPMIM serves as a subadviser to seven mutual funds (the "Subadvised Funds") with investment objectives similar to those of the Funds.[12]  These Subadvised Funds are sponsored and managed by financial institutions (such as insurance companies that offer mutual funds in connection with their life insurance or retirement products) that are unaffiliated with JPMIM.[13]

Each of these financial institutions, in its role as investment adviser, receives an investment advisory fee from the Subadvised Fund that it advises.[14]  Each financial institution then enters into a "subadvisory agreement" with JPMIM to manage either a portion or all of the assets of a Subadvised Fund, and pays JPMIM a portion of the advisory fee the financial institution receives from the Subadvised Fund.[15]  In each case, JPMIM provides its services under the supervision of the financial institution, which has ultimate responsibility as the investment adviser to each of the Subadvised Funds.[16]

Plaintiffs allege that "[t]he investment advisory services that JPMIM provides as sub-adviser to the Subadvised Funds are the same or substantially the same as the services [JPMIM]

---

[12]   Compl. ¶¶ 68, 71, 74.  Plaintiffs point to three Subadvised Funds with investment objectives similar to the Core Bond Fund:  the MetLife JP Morgan Core Bond Portfolio, the Columbia Variable Portfolio JP Morgan Core Bond Fund, and the Transamerica Core Bond Fund.  Comp. ¶ 57.  Plaintiffs identify three mutual funds with investment objections similar to the High Yield Fund:  the LVIP JP Morgan High Yield Fund, the Principal High Yield Fund I, and the AST High Yield Portfolio.  *Id.*  Plaintiffs allege one mutual fund has investment objectives similar to the Short Duration Bond Fund:  the Pemberwick Fund.  *Id.*

[13]   Compl. ¶ 58.

[14]   Compl. ¶ 62.

[15]   Compl. ¶ 63.

[16]   *E.g.*, MetLife JPMorgan Core Bond Portfolio Investment Subadvisory Agreement (Jan. 7, 2013) ("MetLife Subadvisory Agreement") at 1 ("The Adviser . . . employs the Subadviser[] subject to the supervision of the Adviser"); AST High Yield Portfolio Subadvisory Agreement (July 30, 2010) ("AST Subadvisory Agreement") at 9 (JPMIM acts "[s]ubject to the supervision of the Co-Managers").  The MetLife Subadvisory Agreement and AST Subadvisory Agreement are Exhibits F and G to the Goulart Declaration.

provides to the Funds pursuant to the IAA."[17]  The Complaint quotes at length from the Funds'
Prospectus and the prospectuses for some of the Subadvised Funds in an attempt to show that
both types of funds purchase similar securities and follow similar investment strategies.[18]  The
Complaint does not include any allegations about how well JPMIM performs the services it
provides or what it costs JPMIM to provide those services.

**Plaintiffs' Claims**

Plaintiffs allege that the advisory fees that JPMIM charges the Funds violate
Section 36(b) because "[t]he fees that Defendant receives for providing investment advisory
services to the Subadvised Funds are lower than the fees paid by the Funds to Defendant for the
same or substantially the same services."[19]  Plaintiffs do not dispute that the *investment advisory
fees* the Funds pay JPMIM as investment adviser are similar to the *investment advisory fees* that
the Subadvised Funds pay their own investment advisers.[20]  Rather, Plaintiffs compare (i) the
fees the Funds pay JPMIM as *investment adviser* to (ii) the fees the Subadvised Funds'
investment advisers pay JPMIM to serve as a *subadviser*.[21]  Plaintiffs do not allege that the
services JPMIM provides to the Funds are inferior to those provided to the Subadvised Funds.

---

[17]    Compl. ¶ 65.

[18]    Compl. ¶¶ 68, 71, 74.

[19]    Compl. ¶ 79.

[20]    For example, the investment management fee for the Core Bond Fund is 0.30%.  Compl. ¶ 50.  The MetLife
JPMorgan Core Bond Fund – one of the Subadvised Funds that Plaintiffs compare to the Core Bond Fund –
pays an investment management fee to its investment adviser of 0.42%.  Met Investors Series Trust JPMorgan
Core Bond Portfolio Class A & Class B Prospectus (Apr. 28, 2014) ("Met Core Bond Prospectus") at 3.  The
Met Core Bond Prospectus is Exhibit H to the Goulart Declaration.

[21]    Compl. ¶¶ 63, 79, 80, 82, 84.

Instead, the Complaint alleges that the higher fees JPMIM charges the Funds "are not justified by any additional services."[22]

Plaintiffs also allege that JPMIM has realized economies of scale as each Fund's assets have increased, but has failed to share those economies with the Funds through reduced fees.[23] The Complaint does not identify any specific costs that declined (as a percentage of revenue) as assets under management increased. And the Complaint acknowledges that the assets of each of the Funds have *decreased* "during the current fiscal year."[24]

Plaintiffs also impugn the process by which the Board approved the investment advisory agreement with JPMIM. The Complaint alleges that the Board did not devote sufficient time and attention to its duties and relied on unspecified information and analysis that JPMIM purportedly prepared or that was designed to support JPMIM's "rationalization" for the fees charged to the Funds.[25] The Complaint does not plead any facts showing what this information and analysis was, or how it supposedly supported JPMIM's unspecified "rationalization."

The Complaint contains three counts for alleged violations of Section 36(b) – one for each Fund.[26] Each count seeks to recover the unspecified allegedly "excessive investment advisory fees" the Fund paid to JPMIM during the year preceding the initiation of this lawsuit.[27] Each count also "alternatively" seeks rescission of the IAA and restitution of all excessive

---

[22] Compl. ¶ 86. The Complaint acknowledges that JPMIM and its affiliates do provide additional services to the Funds that are not provided to the Subadvised Funds, but alleges that these additional services "are provided pursuant to separate contracts for separate compensation." *Id.* ¶ 87.

[23] Compl. ¶¶ 88-101.

[24] Compl. ¶ 88 (acknowledging Core Bond Fund's decline from $29 billion to $23 billion); *see id.* ¶ 90 (acknowledging High Yield Fund's decline from $11.3 billion to $11 billion), ¶ 92 (acknowledging Short Duration Fund's decline from $12.3 billion to $11 billion).

[25] Compl. ¶¶ 105, 107.

[26] Compl. ¶¶ 123-46.

[27] Compl. ¶¶ 129, 137, 145.

investment advisory fees paid by the Funds pursuant to Section 47 of the ICA, 15 U.S.C. § 80a-46.[28]

Plaintiffs demand a trial by jury.[29] It is well-settled, however, that Section 36(b) claims are equitable in nature and do not entitle shareholders to a jury trial.[30]

## THE RELEVANT STATUTE

The Funds are part of a Delaware statutory trust that is registered as an investment company under the ICA.[31] Section 36(b) of the ICA imposes a "fiduciary duty" on investment advisers of registered investment companies "with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company . . . to such investment adviser or any affiliated person of such investment adviser." 15 U.S.C. § 80a-35(b).[32] Section 36(b) provides an express private right of action to mutual fund shareholders to bring suit for breach of this fiduciary duty, subject to several significant limitations. Among other things, damages are limited to the one-year period preceding the filing of suit. *Id.* § 35(b)(3). And, unlike at common law, where a fiduciary may have the burden of proof to justify its conduct, "the plaintiff shall have the burden of proving a breach of fiduciary duty." *Id.* § 35(b)(1).

---

[28] Compl. ¶¶ 130, 138, 146. Section 47(b) of the 1940 Act provides that a "contract that is made, or whose performance involves, a violation of" the 1940 Act or the rules or regulations thereunder is "unenforceable by either party," unless a court finds that "under the circumstances enforcement would produce a more equitable result than non-enforcement." 15 U.S.C. § 80a-46(b)(1).

[29] Compl. at 30.

[30] *See, e.g., In re Gartenberg*, 636 F.2d 16 (2d Cir. 1980), *cert. denied*, 451 U.S. 910 (1981); *In re Evangelist*, 760 F.2d 27 (1st Cir. 1985); *Sivolella v. Axa Equitable Funds Mgmt., LLC*, 2013 WL 4096239, at *2 (D.N.J. July 3, 2013). If the Complaint is not dismissed, JPMIM intends to move promptly to strike Plaintiffs' jury demand.

[31] Compl. ¶¶ 19-20.

[32] For the Court's convenience, the text of Section 36(b) is attached as Exhibit 2 to this Motion.

The Supreme Court has explained that in enacting Section 36(b) in 1970, Congress reached a "delicate compromise." *Jones*, 559 U.S. at 340. The SEC had originally asked Congress to authorize an action to challenge whether a fee was "reasonable." *Id.* Opponents of the SEC's proposal expressed concern that a reasonableness standard would "in essence provide the [SEC] with rate making authority." *Id.* at 341 (citing *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 538 (1984)). Congress therefore struck a balance by providing shareholders with a new private right of action to challenge advisory fees, but "did not permit a compensation agreement to be reviewed in court for 'reasonableness.'" *Jones*, 559 U.S. at 340. Instead, Congress adopted a "fiduciary duty standard." *Id.*

The Supreme Court explained that under this standard, "to face liability under § 36(b), an investment adviser must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Jones*, 559 U.S. at 346 (citing *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923 (1982), *cert denied*, 461 U.S. 906 (1983)). In analyzing whether a challenged fee is so "disproportionally large" that it violates Section 36(b), the Supreme Court has instructed courts to consider "all relevant factors." *Jones*, 559 U.S. at 346, 349. These factors – sometimes referred to as the "*Gartenberg* factors" – typically include: (i) the nature and quality of services provided by the investment adviser and its affiliates, including the fund's performance; (ii) the profitability of the fund to the adviser and its affiliates; (iii) any fall-out benefits (*i.e.*, other income) the adviser would not have received but for managing the fund; (iv) whether the adviser is sharing any economies of scale realized in managing the fund; and (v) comparative expense ratios and advisory fees paid by similar mutual funds. *See, e.g., Jones*, 559 U.S. at 344-45 & n.5; *Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 409 (2d Cir. 1989); *Gartenberg*, 694 F.2d at

8

928-33. Courts may also accord appropriate deference to the independence, care and conscientiousness of the Fund's Board in approving the challenged advisory agreement, although this factor is not dispositive. *Jones*, 559 U.S. at 348, 351-52.

Courts repeatedly have dismissed Section 36(b) claims pursuant to Rule 12(b)(6) where the complaints failed to plead facts sufficient to show that the disputed fees bore "no reasonable relationship to the services rendered." *E.g.*, *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321 (4th Cir. 2001); *Turner v. Davis Select Advisers LP.*, No. 08-CV-421-TUC-AWT, slip op. at 13 (D. Ariz. June 1, 2011) ("Plaintiff's allegations largely consist of general conclusions, not facts, and Plaintiff does not explain how any of the facts alleged show that a particular fee was 'so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining.'") (citation omitted); *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, 2006 WL 1520222 (S.D.N.Y. May 31, 2006) (cited with approval by *Jones*, 559 U.S. at 350 n.8).

## <u>ARGUMENT</u>

## I.    THE STANDARD OF REVIEW

As the Court is well aware, to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is *plausible* on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added). "[W]here the well-pleaded facts do not permit the court to infer more than the mere *possibility* of misconduct, the complaint has alleged—but it has not '*show[n]*'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (emphasis added); *see In re Honda of America Mfg., Inc. ERISA Fee Litig.*, 661 F. Supp. 2d 861, 864-65 (S.D. Ohio 2009) (Frost, J.) ("*Honda ERISA Fee*

*Litigation*") (applying *Twombly* and *Iqbal* standard to dismiss complaint alleging breach of fiduciary duty under ERISA).

This Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555 (citation omitted). This means that the Complaint's repeated recitals that the fees JPMIM charges the Funds are "disproportionately large" or "excessive" are meaningless by themselves.[33] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## II. THE COMPLAINT FAILS TO PLEAD SUFFICIENT FACTS TO STATE A CLAIM UNDER SECTION 36(b).

The Complaint does not state a plausible claim under Section 36(b) when analyzed under the pleading standards of *Twombly* and *Iqbal*. The Complaint does not plead *any* facts concerning most of the *Gartenberg* factors that courts usually consider relevant under Section 36(b). For example, the Complaint does not contain any allegations about:

(i)     the Funds' performance;

(ii)    the quality of the services JPMIM provides the Funds;

(iii)   the profitability of the Funds to JPMIM;

(iv)    whether JPMIM receives any fall-out benefits from managing the Funds; or

(v)     how the Funds' expense ratios compare to other, similar funds.

Instead, Plaintiffs attempt to take a shortcut and allege only that JPMIM: (i) provides similar services to the Subadvised Funds for lower fees;[34] and (ii) fails to share economies of scale with the Funds.[35] Plaintiffs also criticize the alleged process by which the Board approved

---

[33]   *E.g.,* Compl. ¶¶ 4, 121.

[34]   Compl. ¶¶ 56-87.

[35]   Compl. ¶¶ 88-101.

the advisory agreement.[36]  These allegations – either separately or together – fail to state a plausible claim that JPMIM charges the Funds an advisory fee "that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining."  *Jones*, 559 U.S. at 346.

### A.    A Lack of Fee Parity Is Insufficient to State a Claim Under § 36(b).

Plaintiffs contend that because the *advisory* fees the Funds pay to JPMIM are higher than the *subadvisory* fees institutional clients pay JPMIM for managing some or all of the assets in their Subadvised Funds, the higher fees must be "excessive." Plaintiffs' 'lack of fee parity' theory echoes the dispute in *Jones,* where the parties disagreed over the weight to be given to "comparisons between the fees that an adviser charges a captive mutual fund and the fees that it charges its independent clients."  *Jones*, 559 U.S. at 349.  The Supreme Court explained in *Jones* that courts must be "wary of inapt comparisons" between services an investment adviser provides to different types of clients.  *Id.* at 350.  And even if the services provided to different types of clients are similar, *Jones* explained that Section 36(b) does not require "fee parity" among all clients and funds.  *Id.*

Plaintiffs do not dispute that the *advisory fees* the Funds pays JPMIM are in the same range as the *advisory fees* the Subadvised Funds pay to their own investment advisers.[37] Plaintiffs do not compare these fees; instead, they compare the *advisory* fees paid by the Funds to the *subadvisory* fees paid by the investment advisers of the Subadvised Funds.  This comparison is inapt, because JPMIM serves in different capacities with respect to the Funds and the Subadvised Funds.  As the Complaint alleges, JPMIM "serves as each Fund's investment

---

[36]    Compl. ¶¶ 102-114.

[37]    *See supra* note 20.

adviser,"[38] whereas "JPMIM acts as a so-called 'subadviser' . . . to each Subadvised Fund."[39] Although the Complaint attempts to minimize the difference, courts have recognized that "investment advisers and sub-advisers perform distinct services," and that these "differences . . . alone justify" different fee arrangements. *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 540 (S.D.N.Y. 2008).

JPMIM contracted directly with the Funds to provide its services as investment adviser, is paid by the Funds, and has overall responsibility for managing the Funds under no one's oversight other than the Funds' Board.[40] In contrast, as a subadviser JPMIM has a more limited role. It entered into subadvisory contracts not with the Subadvised Funds directly, but instead with the financial institutions that serve as the investment advisers to the Subadvised Funds.[41] Those contracts require JPMIM to provide services under the supervision of the Subadvised Funds' investment advisers.[42] JPMIM's institutional clients remain responsible for "continually evaluat[ing]" JPMIM's performance.[43] Equating JPMIM's adviser and subadviser roles is just the type of "inapt comparison" the Supreme Court criticized in *Jones*.

Even if JPMIM provided similar services to the Funds and the Subadvised Funds, however, this would not be enough to state a claim under Section 36(b). As the *Jones* Court explained: "Even if the services provided and fees charged to an independent fund are relevant, courts should be mindful that *the Act does not necessarily ensure fee parity between mutual*

---

[38] Compl. ¶ 24.

[39] Compl. ¶ 63.

[40] Compl. ¶ 2; 2004 IAA (Goulart Decl. Ex. C) at 3; 2009 IAA Amendment (Goulart Decl. Ex. D) at 1.

[41] Compl. ¶ 63; *see* MetLife Subadvisory Agreement (Goulart Decl. Ex. F) at 1; AST Subadvisory Agreement (Goulart Decl. Ex. G) at 9. The Subadvised Funds are not parties to those contracts.

[42] *E.g.,* MetLife Subadvisory Agreement (Goulart Decl. Ex. F) at 1; AST Subadvisory Agreement (Goulart Decl. Ex. G) at 9; *see supra* note 16.

[43] *E.g.,* AST Subadvisory Agreement (Goulart Decl. Ex. G) at A-1.

*funds and institutional clients*." 559 U.S. at 350 (emphasis added).  Standing alone, allegations of a lack of "fee parity" do not state a plausible claim that JPMIM's fees were "so disproportionately large" that they bore "no reasonable relationship to the services rendered" and were "beyond the range of arm's-length bargaining." *Id*. at 346, 350 n.8.

*Jones* echoes holdings by other courts faced with similar arguments.  For example, in *Krinsk*, the plaintiffs argued that the fee Merrill Lynch charged for managing its CMA Money Fund violated Section 36(b) because a similar fund of comparable size, the Ready Assets Trust, paid lower fees.  875 F.2d at 409.  The Second Circuit rejected that argument.  It explained that Section 36(b) does not require a fund's board to negotiate "the 'best deal' possible." *Id.*

Similarly, in *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 2000 WL 350400 (D. Md. 2000), *aff'd*, 248 F.3d 321 (4th Cir. 2001), the plaintiff alleged that two mutual funds paid excessive fees in violation of Section 36(b) because, among other reasons, two or three other allegedly similar funds paid fees "amounting to only from 1/2 to 1/3 of those charged" to the plaintiff's funds, "while outperforming the [plaintiff's] funds." *Id* at *3.  The Court rejected "these allegations of 'circumstantial' indicia of excessiveness as legally insufficient" because "these allegations do not remotely touch on the issue of what, if any, *relation* exists between the disputed fees on the one hand, and the services provided in consideration for their payment, on the other hand." *Id.* (emphasis in original).

This Court has recognized the same principal in an analogous context.  In the *Honda ERISA Fees Litigation*, the plaintiffs argued that the defendants breached their fiduciary duties to the Honda 401(k) Savings Plan (the "Plan") under ERISA by including retail shares of mutual funds among the Plan's investment options, instead of using the Plan's size and market leverage

to negotiate lower charges for Plan members.  661 F. Supp. 2d at 861.  This Court disagreed, holding that a fiduciary duty does not require charging the lowest possible fee:

> [I]n the instant action, the retail funds were offered to investors in the general public, setting the expense ratios against the backdrop of market competition. This Court, like the Seventh Circuit in *Hecker*, concludes that nothing in ERISA requires the Honda Defendants . . . to search the market to find and offer the cheapest possible fund.

*Id.* at 867.  The Court cited *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009), which noted that "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund."

As these cases demonstrate, the "fiduciary duty" imposed by Section 36(b) does not require "fee parity," or that a fee be the "best deal" or the lowest possible fee.  A lack of fee parity says nothing about why the services JPMIM provides to the Funds are not worth the fees paid.  Allegations that an investment adviser charges a lower fee to other clients for similar services do not address the nature, quality or costs of those services, let alone explain why the fee being charged for those services is "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining."  *Jones*, 559 U.S. at 346.

## B.  The Allegations Regarding Economies of Scale Are Insufficient to State a Claim Under § 36(b).

Plaintiffs attempt to buttress their allegations concerning a lack of fee parity with allegations that JPMIM "has not adequately shared the benefits of economies of scale with the Funds."  Economies of scale exist if, as a fund's assets go up, revenues increase on a greater percentage basis than expenses.  *Krinsk*, 875 F.2d at 411.  To show that an investment adviser is not sharing economies of scale, Plaintiffs must allege specific facts to show that during the period in question:  (i) the Fund's assets grew; and (ii) the cost of providing services to the Fund

declined (as a percentage of revenue) as a result of that asset growth.  *Id.*  The Complaint fails to

allege either that assets grew or that costs declined.

### 1. Fund Assets Decreased During the Relevant Period.

As Plaintiffs acknowledge, the predicate for any allegation about economies of scale is

that fund assets increase.[44]  Yet the Complaint concedes that the Funds' assets *fell* during the

one-year period that ended shortly before Plaintiffs filed the Complaint.  The Complaint

acknowledges that the Core Bond Fund's assets declined from approximately $29 billion on

February 28, 2013, to $23 billion on March 31, 2014.[45]  Similarly, according to the Complaint,

the High Yield Fund's assets fell by approximately $300 million between those same two

dates.[46]  And the Complaint states that the Short Duration Bond Fund's assets fell by

approximately $1.3 billion, from $12.3 billion to $11 billion, during that same period.[47]  The

Complaint thus fails to allege even a "possibility," let alone a "plausible" claim, that JPMIM

realized any economies of scale – let alone failed to share them.

Lacking any basis to allege that assets grew during the relevant one-year period under

Section 36(b), the Complaint instead alleges that assets grew in years prior to 2013.[48]  But

reliance on "statistics from . . . years" outside the relevant period fails to "provide a necessary

context to the relevant fee allegations."  *In re Scudder Mut. Funds Fee Litig.*, 2007 WL 2325862,

at *16 (S.D.N.Y. Aug. 14, 2007).  Growth over a "time span far outside the bounds of the statute

of limitations" is irrelevant to Plaintiffs' claim.  *Id.*  Such earlier growth "provide[s] minimal

insight into whether the Investment Adviser Defendants passed on the benefits of economies of

---

[44]  Compl. ¶ 96.

[45]  Compl. ¶ 88.

[46]  Compl. ¶ 90.

[47]  Compl. ¶ 92.

[48]  Compl. ¶¶ 88, 90, 92.

scale to shareholders during the relevant time period." *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, 2006 WL 1520222, at *3. In *AllianceBernstein*, for example, the court declined to consider statistics regarding "increases in the expense ratio of [a] [f]und over a three year period that overlaps with less than two months of the applicable time period." *Id.*

### 2. The Complaint Does Not Allege that JPMIM's Costs Decreased.

Even if asset growth in prior years were relevant (which it is not), the Complaint does not plead any facts to show that JPMIM's costs decreased (as a percentage of revenues) as Fund assets increased. The Complaint merely alleges that any increase in the Funds' assets "was not accompanied by a proportionate increase in the work or cost required . . . to provide investment advisory services."[49] These conclusory allegations fail to include any facts about the costs that JPMIM incurs as investment adviser to the Funds.

 "Economies of scale allegations are insufficient where there are no allegations of the costs." *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 528 F. Supp. 2d 332, 338-39 (S.D.N.Y. 2007), *modified on other grounds*, 425 F. App'x 25 (2d Cir. 2011). A plaintiff cannot "meet [its] burden simply by pointing to the size of the funds and their rates of growth." *Id.* at 339; *accord, In re Goldman Sachs Mut. Funds*, 2006 WL 126772, at *9 (S.D.N.Y. Jan. 17, 2006) ("Mere assertions that fees increased with the size of the Funds are not enough to establish that the benefits from economies of scale were not passed on to investors.").

The Complaint does not include any specific facts about JPMIM's "costs of performing fund transactions or the relationship between such costs and the number of transactions performed." *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 345 (2d Cir. 2006).[50]

---

[49]  Compl. ¶ 94.

[50]  *See also Mintz v. Baron*, 2009 WL 735140, at *3 (S.D.N.Y. Mar. 20, 2009); *In re Evergreen Mut. Funds Fee Litig.*, 240 F.R.D. 115, 118 (S.D.N.Y. 2007).

The *only* cost allegation is that "economies of scale . . . reduced the cost."[51]  But "non-Fund-specific, economic analysis regarding theoretical economies of scale" are legally insufficient.  *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 528 F. Supp. 2d at 339.  For this reason, as well, Plaintiffs' economies of scale allegations fail.

### C. Allegations Regarding the Board's Approval Process Are Insufficient to State a Claim Under § 36(b).

The Complaint also alleges that the negotiation process between the Board and JPMIM was flawed, because the Funds' Board devoted insufficient "time and attention" to "independently assess the investment advisory fees" and failed to negotiate a "'most favored nation' provision" that would require the fees paid by the Funds to be as low as the "lowest rate[s]" paid by JPMIM's other clients.[52]

Plaintiffs' attempts to impugn the integrity of the Board or its approval of the investment advisory contract are misplaced.  For example, Plaintiffs complain that the "same Board . . . oversees each of the Funds and more than 160 other mutual funds managed by [JPMIM] or its affiliates."[53]  But allegations that board members "serve on the boards of many other mutual funds . . . are insufficient as a matter of law" to challenge "trustee independence and conscientiousness. "  *Amron*, 464 F.3d at 345.  To the contrary, service on multiple fund boards is "the prevailing practice in the industry."  *Migdal*, 248 F.3d at 330.  Likewise, Plaintiffs accuse the Board of "rel[ying] on information and analyses . . . prepared by" JPMIM,[54] but "[o]ne would expect any conscientious director to request information from management and staff on the day-to-day operations for which they are responsible."  *Id*. at 331.

---

[51]    Compl. ¶ 95.

[52]    Compl. ¶¶ 104, 112.

[53]    Compl. ¶ 27.

[54]    Compl. ¶ 107.

Even if the negotiation process were flawed, however, this would not suffice to state a claim under Section 36(b).  At most, such allegations would affect the amount of deference a court should give to a board's decision-making process.  *See Jones*, 559 U.S. at 351-52; *Gallus v. Ameriprise Fin., Inc.*, 675 F.3d 1173, 1179-80 (8th Cir. 2012).[55]  In *Gallus*, the plaintiff pointed to several flaws in the negotiation process between a fund's board and its adviser in negotiating an investment advisory agreement, including the fact that the board "was not apprised of all relevant information regarding the fee discrepancy between [the adviser's] mutual fund and institutional clients."  *Id.* at 1180.  The plaintiff argued that this flawed process, itself, established a violation of Section 36(b).  The Eighth Circuit disagreed.  A "defective [Board] process," the court explained, does not "impl[y] an excessive fee."  *Id.* at 1180 n.4.  Rather, it simply requires a court to "take a more rigorous look" at the other relevant factors.  *Id.* at 1180 (citation omitted).

Adding allegations criticizing the Board's negotiation process therefore does nothing to transform Plaintiffs' otherwise deficient allegations into a plausible claim under § 36(b).

### D.    Section 47(b) Provides No Separate Basis for a Claim.

As an alternative in all three Counts, Plaintiffs seek rescission of the IAA and restitution of "all excessive investment advisory fees paid" under Section 47(b) of the ICA.[56]  To the extent Plaintiffs are attempting to assert a separate cause of action for violations of Section 47(b), they cannot do so, for two separate reasons.

---

[55]    Section 36(b) also provides that approval of an investment advisory agreement by a mutual fund's board of directors "shall be given such consideration by the court as is deemed appropriate under all the circumstances." 15 U.S.C. § 80a–35(b)(2).  The Supreme Court has explained that where a board's process for negotiating and reviewing an investment advisory agreement is "robust," a court should afford "commensurate deference" to the board's negotiations; whereas if the board's process was "deficient" or the adviser withheld important information, the court must take "a more rigorous look" at the challenged fee.  Regardless of the quality of the Board's process, however, the test under Section 36(b) remains whether the challenged fee is "so disproportionality large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining."  *Jones*, 559 U.S. at 351.

[56]    Compl. ¶¶ 130, 138, 146.

First, Section 47(b) does not give rise to an independent cause of action. As numerous courts have made clear, "Section 47(b) creates a remedy rather than a distinct cause of action or basis of liability." *Santomenno v. John Hancock Life Ins. Co.*, 677 F.3d 178, 187 (3d Cir. 2012); *see also Stegall v. Ladner*, 394 F. Supp. 2d 358, 378 (D. Mass 2005) (declining to permit a separate § 47(b) cause of action); *Jacobs v. Bremner*, 378 F. Supp. 2d 861, 869 (N.D. Ill. 2005) (same); *Mutchka v. Harris*, 373 F. Supp. 2d 1021, 1027 (C.D. Cal. 2005) (same).

Second, plaintiffs are not parties to the IAA and therefore lack statutory standing to seek its rescission. Section 47(b)'s plain language makes rescission available only to a "party" to that contract. The only parties to the IAA are the Funds and JPMIM.[57] As non-parties to the agreement, Plaintiffs are therefore ineligible to seek relief under Section 47(b). *See, e.g., Davis v. Bailey*, 2005 WL 3527286, at *6 (D. Colo. Dec. 22, 2005) (rejecting requested rescission of advisory agreement because "[p]laintiffs were not parties" to it); *Highland Crusader Offshore Partners, L.P. v. Motient Corp.*, 2007 WL 6926718, at *2 (W.D. Tex. Jan. 23, 2007).

## CONCLUSION

The Complaint fails to plead facts showing that the challenged fees are "so disproportionately large that [they] bear[] no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Jones*, 559 U.S. at 346. For the foregoing reasons, the Complaint should be dismissed.

---

[57] *See* 2009 IAA Amendment (Goulart Decl. Ex. C) at 1.

Respectfully submitted,

*Of counsel:*

/s/ Steven W. Tigges

Mark Holland
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.:    (212) 813-8800
Fax:    (646) 558-4118
Email: mholland@goodwinprocter.com

Michael K. Isenman
David I. Freeburg
GOODWIN PROCTER LLP
901 New York Ave NW
Washington, DC 20001
Tel.:    (202) 346-4000
Fax:    (202) 204-7248
Email: misenman@goodwinprocter.com
            dfreeburg@goodwinprocter.com

Steven W. Tigges (0019288), Trial Attorney
John W. Zeiger (0010707)
Bradley T. Ferrell (0070965)
ZEIGER, TIGGES & LITTLE LLP
41 South High Street
3500 Huntington Center
Columbus, OH 43215
Tel.:    (614) 365-9900
Fax:    (614) 365-7900
Email: tigges@litohio.com
            zeiger@litohio.com
            ferrel@litohio.com

*Attorneys for Defendant JP Morgan Investment Management, Inc.*

Dated:  July 10, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of July, 2014, I have caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> David P. Meyer
> Matthew R. Wilson
> Michael J. Boyle, Jr.
> MEYER WILSON CO., LPA
> 1320 Dublin Road, Suite 100
> Columbus, OH 43215
> Tel: (614) 224-6000
> Fax: (614) 224-6066
>
> *Attorneys for Plaintiffs*
> *Nancy Goodman and Jacqueline Peiffer*


/s/ Steven W. Tigges