**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| Nancy Goodman and Jacqueline Peiffer, | Civil No. 2:14 CV-414 |
| Plaintiffs, | |
| | Judge Frost |
| v. | |
| J.P. Morgan Investment Management, Inc., | Magistrate Judge King |
| Defendant. | |

**REPLY MEMORANDUM OF DEFENDANT**
**J.P. MORGAN INVESTMENT MANAGEMENT, INC.**
**IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

Mark Holland (admitted *pro hac vice*)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.:   (212) 813-8800
Fax:    (646) 558-4118
Email: mholland@goodwinprocter.com

Michael K. Isenman (admitted *pro hac vice*)
David I. Freeburg (admitted *pro hac vice*)
GOODWIN PROCTER LLP
901 New York Ave NW
Washington, DC 20001
Tel.:   (202) 346-4000
Fax:    (202) 204-7248
Email: misenman@goodwinprocter.com
       dfreeburg@goodwinprocter.com

Steven W. Tigges (0019288), Trial Attorney
John W. Zeiger (0010707)
Bradley T. Ferrell (0070965)
ZEIGER, TIGGES & LITTLE LLP
41 South High Street
3500 Huntington Center
Columbus, OH 43215
Tel.:   (614) 365-9900
Fax:    (614) 365-7900
Email: tigges@litohio.com
       zeiger@litohio.com
       ferrell@litohio.com

Attorneys for Defendant J.P. Morgan
Investment Management, Inc.

Dated:  September 23, 2014

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.     Plaintiffs Misstate The Applicable Legal Standards To State A Claim Under Section 36(b). ............................................................................................................... 2

II.    The Opposition Fails To Identify Any Allegations Showing An Unreasonable Relationship Between The Fees And Services JPMIM Provides The Funds. ................... 4

      A.    Plaintiffs Allege No More Than A Lack Of Fee Parity That *Jones* Found Insufficient. ................................................................................................ 4

            1.    Plaintiffs Make No Showing That The Fees Are Beyond The Range Of Arms' Length Bargaining. ................................................ 5

            2.    The Opposition Ignores The Different Markets For Advisory And Subadvisory Services. ................................................................ 5

            3.    Plaintiffs Have No "Other Evidence" To Show The Fees Are Unreasonable In Relation To The Services JPMIM Provides The Funds. ................................................................................................ 7

      B.    Plaintiffs Ignore The Facts In The Cases They Rely Upon. ..................................... 8

III.   Plaintiffs Fail To Rebut The Insufficiency Of The Complaint's Economies Of Scale Allegations. ................................................................................................................ 11

      A.    Plaintiffs Concede That Assets Decreased During The Relevant Period. ............. 11

      B.    Plaintiffs Acknowledge That They Have Not Pleaded Any Facts About JPMIM's Costs. ............................................................................................... 12

      C.    Section 36(b) Does Not Mandate Breakpoints To Share Economies Of Scale. ..... 14

IV.   Plaintiffs' Allegations Regarding The Board Approval Process Cannot Salvage Their Claim. ......................................................................................................................... 15

V.    Plaintiffs Concede That Section 47(b) Provides No Separate Cause Of Action. ............. 16

VI.   The Complaint Should Be Dismissed With Prejudice. .................................................. 16

CONCLUSION ................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ABS Industries, Inc. v. Fifth Third Bank,*
    2008 WL 2185378 (N.D. Ohio May 23, 3008),
    *aff'd,* 333 F. App'x 994 (6th Cir. 2009)..................................................................................6

*Amron v. Morgan Stanley Inv. Advisors Inc.,*
    464 F.3d 338 (2d Cir. 2006)..................................................................................13

*Begala v. PNC Bank,*
    214 F.3d 776 (6th Cir. 2000) ..................................................................................16

*Curran v. Principal Mgmt. Corp.,*
    2010 WL 2889752 (S.D. Iowa June 8, 2010) ..........................................................8

*Hebda v. Davis Selected Advisors, L.P.,*
    No. 1:14-CV-04318-LTS (S.D.N.Y. June 16, 2014) ..........................................1, 15

*Hunt v. Invesco Funds Group, Inc.,*
    2006 WL 1581846 (S.D. Tex. June 5, 2006) ........................................................9, 10

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.,*
    2006 WL 1520222 (S.D.N.Y. May 31, 2006) ..........................................................12

*In re Am. Mut. Funds Fee Litig.,*
    2009 WL 5215755 (C.D. Cal. Dec. 28, 2009),
    *aff'd sub nom. Jelinek v. Capital Research & Mgmt. Co.,*
    448 F. App'x 716 (9th Cir. 2011) ..........................................................................14

*In re BlackRock Mutual Funds Advisory Fee Litig.,*
    No. 3:14-CV-01165 (D.N.J. Feb. 21, 2014) ........................................................1, 15

*In re Evergreen Mut. Funds Fee Litig.,*
    240 F.R.D. 115 (S.D.N.Y. 2007) ..........................................................................13

*In re Federated Mut. Funds Excessive Fee Litig.,*
    2009 WL 5821045 (W.D. Pa. Sept. 30, 2009)......................................................9, 12

*In re Franklin Mut. Funds Fee Litig.,*
    478 F. Supp. 2d 677 (D.N.J. 2007) ........................................................................13

*In re Gartenberg,*
    636 F.2d 16 (2d Cir. 1980),
    *cert. denied,* 451 U.S. 910 (1981) ........................................................................11

iii

*In re Goldman Sachs Mut. Funds Fee Litig.*,
  2006 WL 126772 (S.D.N.Y. Jan. 17, 2006) ......................................................................2

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
  528 F. Supp. 2d 332 (S.D.N.Y. 2007),
  *modified*, 425 F. App'x 25 (2d Cir. 2011) ...............................................................13

*In re Scudder Mut. Funds Fee Litig.*,
  2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007) ...........................................................12

*Jones v. Harris*,
  559 U.S. 335 (2010)...................................................................................... passim

*Kasilag v. Hartford Inv. Fin. Servs., LLC*,
  2012 WL 6568409 (D.N.J. Dec. 17, 2012).........................................................8, 13

*Krinsk v. Fund Asset Mgmt., Inc.*,
  875 F.2d 404 (2d Cir. 1989)......................................................................................11

*Lynn M. Kennis Trust v. First Eagle Investment Mgmt., LLC*,
  No. 1:14-CV-00585-SLR-SRF (D. Del. May 7, 2014).......................................1, 15

*Mintz v. Baron*,
  2009 WL 735140 (S.D.N.Y. Mar. 20, 2009) ............................................................13

*Reso ex rel. Artisan Int'l Fund v. Artisan Partners Ltd. P'ship*,
  2011 WL 5826034 (E.D. Wis. Nov. 18, 2011) ......................................................9, 12

*Sins v. Janus Capital Mgmt., LLC*,
  2006 WL 3746130 (D. Colo. Dec. 15, 2006).........................................9, 10, 12, 16

*Strigliabotti v. Franklin Res., Inc.*,
  2005 WL 645529 (N.D. Cal. Mar. 7, 2005)...............................................................12

*Yampolsky v. Morgan Stanley Inv. Advisers Inc.*,
  2004 WL 1065533 (S.D.N.Y. May 12, 2004),
  *aff'd sub nom. Amron v. Morgan Stanley Inv. Advisors Inc.*,
  464 F.3d 338 (2d Cir. 2006).....................................................................................16

*Young v. General Motors Investment Management Corp.*,
  325 F. App'x 31 (2d Cir. 2009) ..........................................................................10, 11

## STATUTES

Investment Company Act of 1940, as amended, 15 U.S.C. §§ 80a-1 et seq.

  Section 36(b), 15 U.S.C. § 80a-35(b) ........................................................... passim

  Section 47, 15 U.S.C. § 80a-46...................................................................................16

**COURT RULES**

Fed. R. Civ. P. 15(a) ....................................................................................................16

**OTHER AUTHORITIES**

S.E.C., DIV. OF INV. MGMT: REPORT ON MUTUAL FUND FEES AND EXPENSES (Dec. 2000),
*available at* http://www.sec.gov/news/studies/feestudy.htm....................................................14

## PRELIMINARY STATEMENT

Plaintiffs' 35-page Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Opposition" or "Opp.") misstates the applicable legal standards for pleading a claim under Section 36(b) and repeats the few facts actually alleged in the Complaint over and over in the apparent hope that the Court will mistake repetition and length for substance.  None of those facts suggests that the fees JPMIM charges the Funds are "so disproportionately large" that they "bear[] no reasonable relationship to the services rendered and could not have been the product of arms' length bargaining." *Jones v. Harris*, 559 U.S. at 346.  A significant portion of the Opposition, moreover, consists of a general critique of mutual fund industry practices and is not specific to JPMIM or the Funds.[1]  Similar criticisms could be leveled at almost any of the thousands of mutual funds in the United States.[2]

The Opposition demonstrates that this motion turns on a narrow legal issue:  whether allegations that an investment adviser charges a mutual fund a higher fee than it charges institutional clients for similar services when acting as a subadviser – without more – state a claim under Section 36(b).  The Supreme Court answered this question in *Jones v. Harris*.  In the very passage Plaintiffs repeatedly cite, the Court stated that "[o]nly where plaintiffs have shown a large disparity in fees that cannot be explained by the different services *in addition to other evidence* that the fee is outside the arms' length range will trial be appropriate." *Jones*, 559 U.S. at 350 n.8 (emphasis added).

---

[1] Except as otherwise indicated, capitalized term and abbreviations (including case name abbreviations) are the same as in Defendant's Motion to Dismiss.

[2] Indeed, Plaintiffs' New York counsel has recently filed excessive fee complaints against a number of investment advisers.  *See, e.g., In re BlackRock Mutual Funds Advisory Fee Litig.*, No. 3:14-CV-01165 (D.N.J. filed Feb. 21, 2014); *Lynn M. Kennis Trust v. First Eagle Investment Mgmt., LLC,* No. 1:14-CV-00585-SLR-SRF (D. Del. filed May 7, 2014); *Hebda v. Davis Selected Advisors, L.P.*, No. 1:14-CV-04318-LTS (S.D.N.Y. filed June 16, 2014).

Plaintiffs have not alleged any "other evidence." As the Opposition acknowledges, the Complaint does not allege facts regarding most of the *Gartenberg* factors that courts typically consider when evaluating claims under Section 36(b), such as performance, profitability, comparisons to similar mutual funds, or fall-out benefits. And, even for the two *Gartenberg* factors that Plaintiffs do address – economies of scale and board approval – they concede (i) that the Funds' assets shrank during the year at issue, refuting their economies of scale allegations, and (ii) that their allegations regarding Board approval, standing alone, cannot support a claim under Section 36(b). Plaintiffs defend the paucity of their allegations by arguing that JPMIM is requiring Plaintiffs to "*prove* their claims rather than plead them." Opp. at 1 (emphasis in original). That, of course, is not the case: JPMIM's motion contends that even if Plaintiffs could prove the few facts actually alleged in the Complaint, as a matter of law they would not be enough to establish liability under Section 36(b).

The Complaint therefore should be dismissed. And, because Plaintiffs chose to stand on their Complaint rather than amend it to try to remedy the deficiencies pointed out in the motion, JPMIM respectfully requests that dismissal should be with prejudice.

## ARGUMENT

### I. Plaintiffs Misstate The Applicable Legal Standards To State A Claim Under Section 36(b).

The Opposition misstates the standard for liability under Section 36(b). Citing an eight-year-old district court decision that actually *dismissed* a Section 36(b) complaint, Plaintiffs contend that "the inquiry at the pleading stage" is whether they have alleged facts showing "that the fees are disproportionately large, that they bear no reasonable relationship to the services rendered *or* that they could not have been the product of arms' length bargaining." Opp. at 12 (*citing In re Goldman Sachs Mut. Funds Fee Litig.*, 2006 WL 126772, at *9 (emphasis added)).

In fact, the correct standard, as the Supreme Court articulated in 2009 in *Jones*, is whether the challenged fee "is so disproportionately large that it bears no reasonable relationship to the services rendered *and* could not have been the product of arms' length bargaining." *Jones*, 559 U.S. at 346 (emphasis added).

Plaintiffs' error is more than one of semantics.  The Opposition proceeds on the presumption that Plaintiffs can state a claim under Section 36(b) merely by alleging disparate fees or a lack of arms' length negotiation, without having to explain why the fees bear no reasonable relationship to the services rendered.  If that were enough, a Section 36(b) claim could be stated against virtually every mutual fund adviser in the industry.  The Opposition, like the Complaint, says almost nothing about the actual services JPMIM provides the Funds, or what relationship those services bear to the fees JPMIM charges, let alone explains why there is no reasonable relationship between the two.  Plaintiffs' failure to do so is fatal to their claims.

Plaintiffs also construct a straw-man argument by insisting that they "are *not* required to plead facts with respect to all of the *Gartenberg* factors" to state a claim under Section 36(b). Opp. at 12 (emphasis in original).  JPMIM never argued that Plaintiffs must plead facts regarding every *Gartenberg* factor.  Rather, JPMIM argued that no court has ever sustained a claim under Section 36(b) unless the complaint alleged actionable facts regarding at least some of those factors.  Motion at 10-11.  Here, by contrast, Plaintiffs have failed to plead facts sufficient to support *any* of the *Gartenberg* factors, let alone enough of the *Gartenberg* factors to state a claim under Section 36(b).

II.     **The Opposition Fails To Identify Any Allegations Showing An Unreasonable Relationship Between The Fees And Services JPMIM Provides The Funds.**

      A.     **Plaintiffs Allege No More Than A Lack Of Fee Parity That *Jones* Found Insufficient.**

The Opposition argues repeatedly and at length that, under *Jones*, all Plaintiffs need to allege to state a claim under Section 36(b) is:  (i) a disparity between the fees paid by the Funds and the fees paid by the financial institution sponsors of the Subadvised Funds, and (ii) that JPMIM provides "the same or substantially the same investment advisory services" to both. *E.g.*, Opp. at 14-16, 19-22.  Although Plaintiffs disavow any intention of arguing that JPMIM "must charge the same fees to all of its clients" (Opp. at 21), they contend on the very next page that if the difference in fees "cannot be explained by any difference in the services provided," then the higher fee necessarily violates Section 36(b) (Opp. at 22).

Plaintiffs are incorrect as a matter of law.  *Jones* did not hold that allegations of a fee disparity for providing the same services suffice to state a claim under Section 36(b).  559 U.S. at 350.  *Jones* cautioned that "[e]ven if the services provided and fees charged to an independent fund are relevant, courts should be mindful that the [Investment Company] Act does not necessarily ensure fee parity between mutual funds and institutional clients."  *Id*.  The Supreme Court recognized that Section 36(b) allows an investment adviser to charge a mutual fund higher fees than it charges its institutional clients; the Court explicitly rejected the proposition that "a fiduciary may charge its controlled clients no more than its independent clients."  *Id.*  In the very passage that Plaintiffs rely upon (Opp. at 13), the Court went on to explain that to avoid dismissal before trial, a Section 36(b) plaintiff bears the burden of showing that the challenged fees "are beyond the range of arms' length bargaining," and that courts should "assess any disparity in fees in light of the different markets for advisory services."  559 U.S. at 350 n.8.  The Court concluded that "[o]nly where plaintiffs have shown a large disparity in fees that cannot be

explained by the different services *in addition to other evidence* that the fee is outside the arms'

length range will trial be appropriate." *Id*. (emphasis added).  The Complaint does not allege

facts that would meet these requirements.

### 1. Plaintiffs Make No Showing That The Fees Are Beyond The Range Of Arms' Length Bargaining.

Plaintiffs argue that the fees JPMIM charges the Funds were not negotiated at arms'

length, but do not point to any allegations in the Complaint showing why they are not within the

range that could have been negotiated.  All Plaintiffs point to are their allegations that JPMIM

charges financial institutions lower fees to serve as a subadviser than it charges the Funds to

serve as the investment adviser.  Opp. at 17.  This shows nothing more than that JPMIM charges

different clients different fees, which *Jones* expressly stated does not establish a claim for breach

of fiduciary duty under Section 36(b).  559 U.S. at 350.  By definition, the subadvisory fees

JPMIM receives are only a portion – and therefore less than – the advisory fees the sponsoring

institutions receive for managing the Subadvised Funds.  The financial institutions sponsoring

the Subadvised Funds may pay JPMIM lower fees to serve as a subadviser than JPMIM receives

when it is the financial institution sponsoring the Funds.  It does not follow that the fees JPMIM

receives for managing the Funds fall outside the range of what could have been negotiated at

arms' length.

### 2. The Opposition Ignores The Different Markets For Advisory And Subadvisory Services.

The Opposition itself demonstrates that the "market" for subadvisory services is different

than the market for advisory services.  An investor cannot invest in a Subadvised Fund and pay

only the subadvisory fees that JPMIM charges to that fund's financial institution sponsor.

Rather, the investor would have to bear the fees that the Subadvised Fund pays its sponsoring

financial institution, which are higher than the subadvisory fees that the financial institution pays

JPMIM.  And, as Plaintiffs acknowledge, the fees the sponsoring financial institutions charge the Subadvised Funds are within the range of the fees JPMIM charges the Funds.  Opp. at 20.

Plaintiffs also resort to mischaracterizing the allegations in their own Complaint to make their fee comparison appear more apt.  The Complaint seeks to compare (i) fees paid by mutual funds – namely, the Funds – to their investment adviser with (ii) fees paid by the financial institutions that sponsor the Subadvised Funds to a third party (JPMIM).[3]  The Complaint itself accurately explains that it is the sponsoring financial institutions that pay JPMIM's fees for services relating to the Subadvised Funds.[4]  The Opposition, however, repeatedly misstates who pays JPMIM's fees in connection with the Subadvised Funds.  Plaintiffs mischaracterize the arrangement as "*fees charged to the Subadvised Funds by JPMIM*" (Opp. at 2, 14), and "*the fees charged by JPMIM to the Subadvised Funds*" (Opp. at 3, 14, 17), as if it were the Subadvised Funds themselves that pay JPMIM.  By mischaracterizing the fee arrangement in this way, Plaintiffs apparently hope to circumvent the Supreme Court's warning in *Jones* that "courts must be wary of inapt comparisons" regarding "fees charged different types of clients."  559 U.S. at 349-50.  However, Plaintiffs cannot "change stride in the middle of this litigation and disavow the allegations of [their] own complaint solely to survive a motion to dismiss." *ABS Industries, Inc. v. Fifth Third Bank*, 2008 WL 2185378, at *3 (N.D. Ohio May 23, 3008), *aff'd*, 333 F. App'x 994 (6th Cir. 2009).

Further, as the Opposition itself points out, in the case of the Subadvised Funds, the sponsoring financial institutions have the role of overseeing the activities of JPMIM, in addition

---

[3] Compl. ¶ 64.

[4] Compl. ¶ 64.  The subadvisory agreements referenced in the Complaint confirm this fee arrangement.  For example, the AST High Yield Bond Fund subadvisory agreement confirms that Prudential Investments LLC and AST Investment Services, Inc., the financial institutions sponsoring the AST High Yield Bond Fund, "shall pay the Subadviser" – that is, JPMIM – a fee "as full compensation for  the services provided."  Goulart Decl., Exh. G, at ¶ 3.  Likewise, it is MetLife Advisers, LLC that agrees to pay JPMIM "[i]n consideration of services rendered pursuant to this Agreement" relating to the MetLife Subadvised Fund.  Goulart Decl., Exh. F, at ¶ 3.

to the oversight provided by the Subadvised Funds' boards.  Opp. at 16.  In other words, the

management structure for the Funds and the Subadvised Funds differs, as follows:



The sponsoring institution (whether the sponsor of a Subadvised Fund or JPMIM for the Funds)

thus incurs greater reputational, regulatory, and entrepreneurial risks than a subadviser.  The

markets for the two types of services therefore have significant differences.

### 3. Plaintiffs Have No "Other Evidence" To Show The Fees Are Unreasonable In Relation To The Services JPMIM Provides The Funds.

Apart from the allegation that JPMIM charges the Funds a higher fee than it charges the

financial institutions that sponsor the Subadvised Funds for allegedly similar services, Plaintiffs

have no "other evidence," *see Jones*, 559 U.S. at 350 n.8, to show that the fees the Funds pay

JPMIM are unreasonable in relation to the services rendered.  The Opposition acknowledges that

the Complaint does not discuss most of the *Gartenberg* factors, such as the quality of the

services (including performance), profitability, fees paid by comparable funds, or fall-out

benefits, all of which may be relevant evidence in determining whether the challenged fees are

excessive.  Opp. at 6; *see Jones*, 559 U.S. at 345 n.5.  As shown below, Plaintiffs have not

alleged facts sufficient to show that JPMIM realized economies of scale during the relevant

period.  And Plaintiffs admit their allegations regarding the Board approval process, by

themselves, do not suffice to plead a violation of Section 36(b).  Opp. at 33.  Plaintiffs therefore

have no "other evidence" to support their claims.  Without such allegations, they cannot establish

that the fees are excessive relative to the services JPMIM provides to the Funds.

### B. Plaintiffs Ignore The Facts In The Cases They Rely Upon.

Plaintiffs repeatedly cite half a dozen cases that denied motions to dismiss Section 36(b)

claims, arguing that the courts in those cases sustained the complaints because they alleged that

the defendant advisers "charged lower fees to other clients for the same or substantially the same

services."  Opp. at 18; *see also* Opp. at 20.  None of those cases held that allegations of fee

disparity, alone, sufficed to state a Section 36(b) claim.  Nor did any of them hold that

investment advisory fees paid by a mutual fund could be excessive simply because they were

higher than the fees the fund's investment adviser received for managing institutional accounts

with similar objectives and strategies.  In all of those cases, the complaints alleged considerable

"other evidence" of the relevant *Gartenberg* factors.

In *Kasilag* and *Curran*, for example, the complaints challenged the amount of fees

retained by investment advisers who hired subadvisers; the advisers in those cases allegedly kept

the bulk of the fees while the subadvisers provided the bulk of the services.  *E.g., Curran v.

Principal Mgmt. Corp.*, 2010 WL 2889752, at *8 (S.D. Iowa June 8, 2010) ("Plaintiffs assert that

'Defendants provide little, if any, additional advisory services beyond hiring the sub-advisor.'").

In *Kasilag*, the plaintiffs provided "eight additional pages" and "great detail" describing the

services provided by the defendant.  *Kasilag v. Hartford Inv. Fin. Servs., LLC*, 2012 WL

6568409, at *3 (D.N.J. Dec. 17, 2012).  Similarly, in *Curran*, the plaintiffs discussed specific

services provided by the defendants, noting that the "accounting and corporate administrative

type services included in the Management Agreement are a very small percentage of the expenses incurred under the agreement [while] transfer agency costs are typically by far the largest component of administrative costs."  2010 WL 2889752, at *8.  No such allegations appear here.

Similarly, the complaints in Plaintiffs' other cited cases contained detailed factual allegations regarding relevant *Gartenberg* factors, unlike the Complaint here.  For example, in *Reso*, the plaintiffs alleged that the services the adviser provided were "de minimus" and the quality of those services was "below par."  *Reso ex rel. Artisan Int'l Fund v. Artisan Partners Ltd. P'ship*, 2011 WL 5826034, at *7 (E.D. Wis. Nov. 18, 2011).  The plaintiffs also alleged that the adviser performed very few services for its fee, and that the fund had to pay for the rest of the services itself.  The complaint also pointed out that Morningstar, a well-known mutual fund ratings publication, had given the adviser a grade of "F" (on a grading scale of "A" through "F") for "stewardship."  The Complaint here does not – and cannot – make any similar allegations. The Complaint in *Reso* also included allegations regarding the excessive profitability of the fund to the adviser.  The Complaint in this case says nothing about profitability.

In *Federated*, the complaint also contained detailed allegations regarding the poor quality of the services provided by the adviser, which also received a grade of "F" from Morningstar for stewardship, as well as allegations that the fund's expense ratio was the highest of 266 comparable funds.  *In re Federated Mut. Funds Excessive Fee Litig.,* 2009 WL 5821045, at *6 (W.D. Pa. Sept. 30, 2009).  Again, no such allegations appear – or could appear – here.  In *Hunt* and *Sins*, the courts, applying pre-*Twombly* and *Iqbal* pleading standards, found that allegations regarding the nature and quality of the services provided, comparisons to fees charged to similar mutual funds, and economies of scale were "sufficiently specific" to state claims under Section

36(b).[5] *Hunt v. Invesco Funds Group, Inc.*, 2006 WL 1581846, at *1, *4 (S.D. Tex. June 5, 2006); *Sins v. Janus Capital Mgmt., LLC*, 2006 WL 3746130, at *3 (D. Colo. Dec. 15, 2006). Besides including more specific facts and different legal theories than this case, the complaints in those cases thus included the "other evidence," in addition to allegations regarding a disparity in fees, that the *Jones* court required. *See* 559 U.S. at 350 n.8.

The cases on which Plaintiffs rely thus are relevant chiefly by contrast. Unlike here, the complaints in those cases alleged facts regarding several *Gartenberg* factors, such as the quality of the services provided (*e.g.*, performance, stewardship, or a *de minimis* level of services for the fees charged), profitability, comparisons to similar funds, and fall-out benefits. Also unlike here, the complaints in several of those cases contained plausible allegations that the adviser realized economies of scale during the relevant period that it was not sharing with the fund. Those complaints therefore were hardly "virtually identical" (Opp. at 2) to the Complaint here.

Finally, Plaintiffs argue that the Court's holding in the *Honda ERISA Fees Litigation* case has "no applicability" here because it applied the statutory standard for ERISA rather than Section 36(b). Opp. at 23. However, the Second Circuit, including then Judge (now Justice) Sotomayor, has held that the two standards are similar. In *Young v. General Motors Investment Management Corp.*, 325 F. App'x 31 (2d Cir. 2009), the plaintiffs alleged that the defendants breached their fiduciary duties under ERISA in managing General Motors' retirement plan because they invested assets in mutual funds that charged fees and expenses that "were excessive as compared to . . . similar investment products [that] were available with substantially lower

---

[5] In *Sins,* the court was "troubled" and "concerned" by the plaintiffs' generic allegations. Nonetheless, it felt bound, pre-*Iqbal*, to accept "generic" and "boilerplate" allegations merely because they were "possible." 2006 WL 3746130, at *3. In *Hunt*, the court said it could not dismiss a complaint that "lack[ed] detailed information in support of Plaintiffs' claims," because of the pre-*Iqbal* standard limiting dismissal to when "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." 2006 WL 1581846, at *1, 4.

fees and expenses." *Id.* at 32-33. Analyzing the same sections of ERISA that were at issue in the *Honda ERISA Fees Litigation*, the Second Circuit explained: "We consider the standard for excessive fee claims articulated in the context of the Investment Company Act ('ICA') useful for reviewing plaintiffs' claim that excessive fees violated ERISA." *Id.* at 33 (citing *Gartenberg*, 694 F.2d at 928, and *Krinsk*, 875 F.3d at 409). Applying the *Gartenberg* standard, the Second Circuit concluded that despite allegations that similar funds with lower fees were available, the "Plaintiffs fail to allege that the fees were excessive relative to the services rendered" and "allege no facts concerning other factors relevant to determining whether a fee is excessive under the circumstances." *Id.* The court therefore affirmed dismissal of the complaint. The Complaint here suffers from the same pleading defects and should be dismissed for the same reasons.

## III. Plaintiffs Fail To Rebut The Insufficiency Of The Complaint's Economies Of Scale Allegations.

JPMIM demonstrated in its Motion that the Complaint's allegations regarding economies of scale were legally insufficient for two independent reasons. First, each Fund's assets actually shrank during the relevant one-year period preceding the filing of the Complaint. Second, the Complaint omits any allegation that would plausibly show that JPMIM's costs decreased. The Opposition does nothing to rebut either shortcoming. Instead, Plaintiffs appear to suggest that an absence of fee breakpoints is the only allegation necessary to make a plausible claim that JPMIM failed to share economies of scale. The law is to the contrary.

### A. Plaintiffs Concede That Assets Decreased During The Relevant Period.

Plaintiffs grudgingly concede that "each of the Funds experienced a slight decrease" in assets during the one year at issue. Opp. at 10; *see also* Opp. at 29 (acknowledging that assets "slightly decreased"). That admission is fatal to Plaintiffs' economy of scale allegations. To avoid that result, Plaintiffs again point to asset growth in prior years. Opp. at 29-30. But as

JPMIM demonstrated in its Motion (at 15-16), courts have repeatedly held that growth "outside the bounds of the statute of limitations" is irrelevant to whether an adviser realized economies of scale during the applicable one-year period.  *In re Scudder Mut. Funds Fee Litig.*, 2007 WL 2325862, at *16; *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, 2006 WL 1520222, at *3.

Plaintiffs do not even attempt to distinguish the *Scudder* or *AllianceBernstein* decisions. Instead, Plaintiffs observe that the complaints in those cases "also were deficient" for reasons in addition to economies of scale, as if that somehow discredits the courts' reasoning.  Opp. at 27. In a misguided attempt to manufacture a split of authority, Plaintiffs cite to four cases that Plaintiffs contend "looked to the growth beyond" the relevant one-year period.  Opp. at 30 (citing *Reso ex rel. Artisan Int'l Fund*, 2011 WL 5826034; *In re Federated,* 2009 WL 5821045; *Sins*, 2006 WL 3746130; *Strigliabotti v. Franklin Res., Inc.*, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005)).  None of these four cases, however, involved assets that *shrank* during the relevant one year prior to filing the complaint.  None of these cases stands for the proposition that a court can ignore shrinking assets during that period.  And none of these cases casts doubt on the reasoning in *Scudder* or *AllianceBernstein*.

### B.      Plaintiffs Acknowledge That They Have Not Pleaded Any Facts About JPMIM's Costs.

Plaintiffs do not dispute that the Complaint's *only* allegation about costs is that "economies of scale . . . reduced the cost."[6]  Implicitly conceding that they have no good faith basis to allege anything more specific, Plaintiffs state that "data regarding [an] investment adviser's operations are not readily available."  Opp. at 28.

---

[6] Compl. ¶ 95.

But as JPMIM explained in its Motion (at 16-17), court after court has concluded that without specific allegations to show that costs decreased (as a percentage of revenue) as assets went up, allegations about economies of scale are legally insufficient.  *Amron*, 464 F.3d at 345; *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 528 F. Supp. 2d at 338-39; *Mintz*, 2009 WL 735140, at \*3; *In re Evergreen Mut. Funds Fee Litig.*, 240 F.R.D. at 118.  The only basis Plaintiffs present for distinguishing these cases is, again, that the underlying complaints in those cases "also were deficient" for reasons other than just inadequately alleging economies of scale.  Opp. at 27; *see also* Opp. at 28 n.9 (contending that the *Salomon Smith Barney* complaint was also deficient because it "failed to allege anything about the services . . . in relation to the fees charged").  As one district court explained, Plaintiffs' allegations would apply to "any fund that grew over time while not simultaneously lowering its fees."  *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d 677, 687 (D.N.J. 2007).  It does not follow that the failure to lower fees means that the adviser is "subject to suit under the ICA."  *Id.*

Plaintiffs contend that their economy of scale allegations "are of the same nature and specificity that the court found sufficient in *Kasilag*."  Opp. at 25 (citing 2012 WL 6568409).  Plaintiff's reliance is misplaced.  In *Kasilag*, the defendant's "motion to dismiss [did] not" even "address . . . economies of scale."  2012 WL 6568409, at \*5.  Without the benefit of the adversarial process, the court only "addresse[d] the[] factor[] briefly."  *Id.*

Finally, Plaintiffs fabricate a "graph" to "illustrate the *concept* behind economies of scale."  Opp. at 30 (emphasis added).  In other words, the graph does not reflect anything about JPMIM's *actual* costs or revenue, but rather is intended to illustrate the theoretical "concept" of economies of scale in general.  The graph does not include a scale for the y-axis, which renders it meaningless.  But assuming the bottom of the graph represents zero dollars, the graph

13

implausibly suggests, without any factual support, that JPMIM's "Advisory Expenses" have been near zero since 2008 and, equally implausibly, that those expenses have remained constant for six years.  Although the Plaintiffs contend that the graph is "based on the allegations of the [C]omplaint" (Opp. at 30), the Complaint alleges nothing of the sort.  The Complaint does not include *any* allegations about JPMIM's costs during any of the years "illustrate[d]" by the graph.

### C.    Section 36(b) Does Not Mandate Breakpoints To Share Economies Of Scale.

Plaintiffs argue that alleging "a complete lack of breakpoints" by itself presents a plausible claim that JPMIM failed to share economies of scale.  Opp. at 27.  To the contrary, "[e]conomies of scale can be shared . . . in a number of ways, including breakpoints, fee reductions and waivers, offering low fees from inception, or making additional investments to enhance shareholder services."  *In re Am. Mut. Funds Fee Litig.*, 2009 WL 5215755, at *52 (C.D. Cal. Dec. 28, 2009), *aff'd sub nom. Jelinek v. Capital Research & Mgmt. Co.*, 448 F. App'x 716 (9th Cir. 2011).  As the SEC itself has explained, "breakpoints are not legally required to be included in [an] advisory contract."  S.E.C., DIV. OF INV. MGMT:  REPORT ON MUTUAL FUND FEES AND EXPENSES, at n.107 (Dec. 2000), *available at* http://www.sec.gov/news/studies/feestudy.htm.

The documents referenced in the Complaint reflect that each of the Funds had contractual fee waiver agreements in place.  For example, the Core Bond Fund prospectus provides that "The Fund's adviser, administrator and distributor . . . have contractually agreed to waive fees and/or reimburse expenses to the extent Total Annual Fund Operating Expenses (excluding [certain enumerated expenses]) exceed 1.00%, 0.45% and 0.40% of the average daily net assets of Class R2, Class R5, and Class R6 Shares, respectively."[7]  The same is true for the Short

---

[7] Goulart Decl., Exh. A, at 9.

Duration Bond Fund, which had fee waivers or expense reimbursements to the extent total expenses "exceed 0.30% of the average daily net assets of Class R6 Shares."[8]  And the High Yield Fund also had fee waivers and/or expense reimbursements to the extent total expenses "exceed 1.35%, 0.80% and 0.75% of the average daily net assets of Class R2, Class R5 and Class R6 Shares, respectively."[9]

Given that economies of scale can be shared in a number of ways – including through fee waivers – and the Funds' undisputed use of contractual fee waivers and expense reimbursements, a lack of breakpoints standing alone says nothing about whether JPMIM did or did not share any economies of scale.  For this additional reason, the Complaint's allegations do not even remotely suggest that JPMIM failed to share any economies of scale.

## IV. Plaintiffs' Allegations Regarding The Board Approval Process Cannot Salvage Their Claim.

The Opposition does not point to any specific facts alleged in the Complaint that show why the Funds' Board's consideration or approval of the IAA was somehow deficient.  In the first instance, Plaintiffs' allegations about the Board are entirely without foundation and are made solely "upon information and belief."[10]  But leaving that aside, Plaintiffs' allegations and arguments are entirely nonspecific to JPMIM – indeed, they are nearly identical, word-for-word, to the board consideration allegations in the other recent complaints filed by Plaintiffs' counsel.[11] They comprise nothing more than "generalized allegations" that "critique[] the mutual fund

---

[8] Goulart Decl., Exh. A, at 5.

[9] Goulart Decl., Exh. A, at 57.

[10] Compl., introductory paragraph preceding ¶ 1.

[11] *Compare* Compl. ¶¶ 102-119, *with In re BlackRock Mutual Funds Advisory Fee Litig.*, No. 3:14-CV-01165, Consolidated Complaint, ¶¶ 121-140 (Dkt. #27) (D.N.J. May 27, 2014); *Lynn M. Kennis Trust v. First Eagle Investment Mgmt., LLC,* No. 1:14-CV-00585-SLR-SRF, Complaint, ¶¶ 91-108 (Dkt. #1) (D. Del. May 7, 2014); *Hebda v. Davis Selected Advisors, L.P.*, No. 1:14-CV-04318-LTS, Complaint, ¶¶ 91-109 (Dkt. #1) (S.D.N.Y. June 16, 2014).  *See* note 2, *supra*.

industry" and therefore cannot support a claim under Section 36(b).  *Sins*, 2006 WL 3746130 at *2.  Indeed, Plaintiffs concede as much, acknowledging that they "are not arguing that, by itself, either a deficient board approval process or the Board's reliance on information provided by the JPMIM [sic] pleads a violation of §36(b)."  Opp. at 33.  The Complaint's allegations regarding the Board approval process therefore hardly provide the "other evidence" necessary under *Jones* to state a claim for a violation of Section 36(b).  *See* 559 U.S. at 350 n.8.

V.    **Plaintiffs Concede That Section 47(b) Provides No Separate Cause Of Action.**

Finally, Plaintiffs concede that they do not have a separate cause of action under Section 47(b) of the ICA.  Opp. at 35.  Their Complaint therefore rises and falls solely on their ability to plead a claim under Section 36(b).

VI.   **The Complaint Should Be Dismissed With Prejudice.**

Under Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiffs had twenty-one days after service of the motion to dismiss to file an amended complaint that corrected the deficiencies JPMIM identified in its Motion.  Plaintiffs elected instead to stand on their Complaint.  Having chosen this path, Plaintiffs are "not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies."  *Begala v. PNC Bank*, 214 F.3d 776, 784 (6th Cir. 2000) (emphasis omitted).  JPMIM respectfully submits, therefore, that the Court should dismiss the Complaint with prejudice – just as the Court did with the complaint in the *Honda ERISA Fees Litigation*.  *See also Yampolsky v. Morgan Stanley Inv. Advisers Inc.*, 2004 WL 1065533, at *2 (S.D.N.Y. May 12, 2004) (dismissing § 36(b) complaint with prejudice), *aff'd*, 464 F.3d 338 (2d Cir. 2006).

## CONCLUSION

Neither the Complaint nor Plaintiffs' Opposition allege facts sufficient to state a plausible claim that JPMIM's fees are "so disproportionately large that [they] bear[] no reasonable relationship to the services rendered and could not have been the product of arms' length bargaining."  Plaintiffs allege a "fee disparity" between the fees paid by the Funds and the fees paid by the financial institutions sponsoring the Subadvised Funds, but have no "other evidence" to support their claims.  *Jones,* 559 U.S. at 350 n.8.  For the foregoing reasons, and for the reasons stated in JPMIM's Motion to Dismiss, the Complaint should be dismissed with prejudice.

Respectfully submitted,

/s/ Steven W. Tigges

| | |
|---|---|
| Mark Holland (admitted *pro hac vice*) | Steven W. Tigges (0019288), Trial Attorney |
| GOODWIN PROCTER LLP | John W. Zeiger (0010707) |
| The New York Times Building | Bradley T. Ferrell (0070965) |
| 620 Eighth Avenue | ZEIGER, TIGGES & LITTLE LLP |
| New York, NY 10018 | 41 South High Street |
| Tel.:    (212) 813-8800 | 3500 Huntington Center |
| Fax:    (212) 355-3333 | Columbus, OH 43215 |
| Email: mholland@goodwinprocter.com | Tel.:    (614) 365-9900 |
| | Fax:    (614) 365-7900 |
| Michael K. Isenman (admitted *pro hac vice*) | Email: tigges@litohio.com |
| David I. Freeburg (admitted *pro hac vice*) |           zeiger@litohio.com |
| GOODWIN PROCTER LLP |           ferrell@litohio.com |
| 901 New York Ave NW | |
| Washington, DC 20001 | |
| Tel.:    (202) 346-4000 | |
| Fax:    (202) 346-4444 | |
| Email: misenman@goodwinprocter.com | |
|           dfreeburg@goodwinprocter.com | |
| | *Attorneys for Defendant J.P. Morgan Investment Management, Inc.* |
| Dated:  September 23, 2014 | |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 23rd day of September, 2014, I have caused the foregoing to

be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to the following:

> David P. Meyer
> Matthew R. Wilson
> Michael J. Boyle, Jr.
> MEYER WILSON CO., LPA
> 1320 Dublin Road, Suite 100
> Columbus, OH 43215
>
> Andrew W. Robertson
> Robin F. Zwerling
> Jeffrey C. Zwerling
> Susan Salvetti
> ZWERLING, SCHACHTER & ZWERLING, LLP
> 41 Madison Avenue
> New York, NY 10010
>
> *Attorneys for Plaintiffs*
> *Nancy Goodman and Jacqueline Peiffer*
>
>            /s/ Steven W. Tigges