UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**NANCY GOODMAN, et al.,**

    **Plaintiffs,**

    v.

**J.P. MORGAN INVESTMENT
MANAGEMENT, INC.,**

    **Defendant.**

Case No. 2:14-cv-414
**JUDGE GREGORY L. FROST**
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court for consideration of the following filings: Defendant's motion to dismiss (ECF No. 13), Plaintiffs' memorandum in opposition (ECF No. 25), Defendant's reply memorandum (ECF No. 26), Plaintiffs' notice of supplemental authority (ECF No. 29), Defendant's response to the supplemental authority (ECF No. 30), Plaintiffs' response to Defendant's response (ECF No. 34), and Plaintiffs' notice of additional supplemental authority (ECF No. 38).  For the reasons that follow, the Court **DENIES** the motion to dismiss.

    **I.    Background**

According to the complaint, Plaintiffs Nancy Goodman and Jacqueline Peiffer each invested money in one or more of three mutual funds involved in this case: the JPMorgan Core Bond Fund, the JPMorgan High Yield Fund, and the JPMorgan Short Duration Bond Fund.  All of these funds are registered under the Investment Company Act of 1940, 15 U.S.C. § 80a-1 *et seq.* ("the ICA").  Goodman has owned shares in the Core Bond Fund since April 2013.  Peiffer

1

has owned shares in the Core Bond Fund, the High Yield Fund, and the Short Duration Bond Fund since April 2013.

These funds pool money from different investors, and the pooled money is then invested in a portfolio of securities. Through an Investment Advisory Agreement ("IAA"), Defendant, JP Morgan Investment Management Inc., serves as each fund's investment adviser and is responsible for managing each fund's portfolio of securities. Defendant is also responsible for researching potential investments and deciding which securities will be purchased for or sold from that portfolio. Under the IAA, each fund pays Defendant an annual fee for providing these services.

In a three-count complaint, Plaintiffs allege the fee charged by Defendant with respect to each fund breached a fiduciary duty created under § 36(b) of the ICA. Moreover, they allege that as a direct, proximate, and foreseeable result of Defendant's breach, the funds sustained millions of dollars in damages. Plaintiffs seek to recover the damages resulting from the breach, including allegedly excessive investment advisory fees paid by the funds to Defendant. Defendant has filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 13.) The parties have completed briefing on the motion, which is ripe for disposition.

## II. Discussion

### A. Standard Involved

Defendant seeks to dismiss this case for failure to state a claim upon which the Court can grant relief. This Federal Rule of Civil Procedure 12(b)(6) argument requires the Court to construe Plaintiffs' complaint in their favor, accept the factual allegations contained in that

pleading as true, and determine whether the factual allegations present plausible claims.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  The United States Supreme Court has explained, however, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Consequently, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

To be considered plausible, a claim must be more than merely conceivable.  *Twombly*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  What this means is that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555.  *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

    **B.**    **Analysis**

Section 36(b) of the ICA provides that

> the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser.

15 U.S.C. § 80a-35(b).  The statutory scheme then provides for a claim by shareholders against the investment adviser for breach of its fiduciary duty in regard to the compensation or payments

3

paid to the investment adviser. *See id.*

The United States Supreme Court has explained that "to face liability under § 36(b), an investment adviser must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Jones v. Harris Assocs., L.P.*, 559 U.S. 335, 346 (2010). This inquiry entails examining all pertinent facts, including the "*Gartenberg* factors":

> (1) the nature and quality of the services provided to the fund and shareholders; (2) the profitability of the fund to the adviser; (3) any "fall-out benefits," those collateral benefits that accrue to the adviser because of its relationship with the mutual fund; (4) comparative fee structure (meaning a comparison of the fees with those paid by similar funds); and (5) the independence, expertise, care, and conscientiousness of the board in evaluating adviser compensation.

*Id.* at 344 n.5. These factors inform review of Plaintiffs' pleading.

In Count I of the complaint, Plaintiffs target the Core Bond Fund. They allege that the Core Bond Fund's advisory fee rate is .30%, which amounted to more than $82 million in advisory fees during fiscal year 2013. Plaintiffs contrast this fee rate and fee with the subadviser fees paid in regard to mutual funds, unaffiliated with Defendant, to which Defendant serves as a subadviser. Plaintiffs allege that the subadvised funds and the Core Bond Funds have invested in the same types of securities and that the investment strategies for the subadvised funds and the Core Bond Funds are substantively the same. But the subadvised funds' fee rates range between .12% to .15%, a difference of 100% to 150%. Plaintiffs claim that application of these lower rates to the Core Bond Fund would save that fund up to $41.4 million annually.

In Count II, Plaintiffs make similar allegation regarding the High Yield Fund. Plaintiffs claim that the High Yield Fund's investment advisory fee rate is .65%, which amounted to more

than $73 million in advisory fees during fiscal year 2013.  They allege that the High Yield Fund invests in the same or substantially the same type of securities as a subadvised high yield fund.  Plaintiffs allege that although servicing the High Yield Fund and the subadvised high yield fund involve substantially identical investment strategies and resources, Defendant's fee rate for the High Yield Fund is 103% to 160% higher than the subadvised high yield fund.  Plaintiffs claim that application of the lower rates to the High Yield Fund would save up to $44 million annually.

In Count III, Plaintiffs target the Short Duration Bond Fund.  They claim that the investment advisory fee rate for this fund is .25%, which amounted to more than $29 million in fees during fiscal year 2013.  Plaintiffs allege that the Short Duration Bond Fund invests in the same or substantially the same type of securities as a subadvised short duration bond fund.  They allege that although servicing the Short Duration Bond Fund and the subadvised short duration bond fund involve substantially identical investment strategies and resources, Defendants' fee rate is 25% to 525% higher than the subadvised short duration bond fund.  Plaintiffs claim that application of the lower rates to the Short Duration Bond Fund would save up to $22.6 million annually.

Plaintiffs also claim that Defendants have failed to share the benefits of economies of scales with the funds.  Plaintiffs allege that the Core Bond Fund has grown from $4.5 billion as of February 28, 2013, to $29 billion at the end of fiscal year 2013.  The High Yield Fund increased from $1.8 billion dollars at the end of 2008 to about $11 billion as of March 31, 2014.  And the Short Duration Bond Fund also increased from $1.7 billion dollars at the end of 2008 to about $11 billion as of March 31, 2014.  Plaintiffs allege that the increase in advisory fees paid to Defendant "was not accompanied by a proportionate increase in the work or cost required by

Defendant to provide investment advisory services to the Funds." (ECF No. 1 ¶ 94.) Plaintiffs claim that "Defendant realized economies of scale as the Funds' AUM increase, which reduced the cost, as a percentage of the Funds' AUM, of providing investment advisory services to each Fund, and increase the profitability to Defendant providing those services." (ECF No. 1 ¶ 96.) In other words, Plaintiffs claim that because Defendant's costs decreased, Defendant should have charged a lesser fee but failed to do so.

Finally, Plaintiffs claim that the fees Defendant charged were not negotiated at arm's length. Plaintiffs allege that "the Board has approved the IAA each year without devoting the time and attention necessary to independently assess the investment advisory fees paid by each Fund or to effectively represent the interests of Fund shareholders . . . ." (ECF No. 1 ¶ 104.) Plaintiffs allege that the Board meets only four times a year and is required to oversee more than 160 JPMorgan managed mutual funds. Thus, Plaintiffs claim, Defendants relied on information that was prepared by Defendant or that supported Defendant's rationale for the charged fees. Moreover, Plaintiffs allege that the Board did not consider information or analyses reflecting the interests of the funds or the shareholders. Plaintiffs allege that there was no negotiation when the Board approved the IAA.

The foregoing factual allegations are enough to survive today's motion to dismiss. This conclusion is informed by guidance from a judicial officer in another § 36(b) case, who correctly recognized:

> Because a claim under § 36(b) need only meet the liberal pleading standards set forth in Rule 8, it is not necessary for a plaintiff to make a conclusive showing of each *Gartenberg* factor to survive a motion to dismiss. But "a § 36(b) complaint is not sufficient if it rests solely on general and conclusory legal assertions that the fees charged were excessive." [*Forsythe v.*

6

> *Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 115 (D. Mass. 2006)]. A plaintiff must allege sufficient facts to plausibly support an inference that the advisory fee is so disproportionately large as to bear no reasonable relationship to the services rendered in exchange for the fee.

*Zehrer v. Harbor Capital Advisors, Inc.*, No. 14 C 789, 2014 WL 6478054, at *2-3 (N.D.Ill. Nov. 18, 2014) (most citations omitted). That same judicial officer went on to explain:

> Courts have required that § 36(b) plaintiffs allege facts supporting the disproportionality of the fees at issue in the suit rather than general facts about the potential for abuse inherent in the system. *See, e.g., Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 343–44 (2d Cir. 2006) (affirming dismissal of § 36(b) claim where the allegations relied on information about the industry rather than allegations "pertinent to th[e] relationship between fees and services") (quoting *Migdal v. Rowe Price–Fleming Int'l*, 248 F.3d 321, 327 (4th Cir. 2001)) (internal quotation marks omitted). If a plaintiff alleges specific facts about the fees paid to the defendant and their relationship to the services rendered, courts have allowed the complaint to survive a motion to dismiss. For example, in *Kasilag v. Hartford Investment Financial Services, LLC*, No. 11–1083, 2012 WL 6568409 (D.N.J. Dec. 17, 2012), the plaintiff alleged that the defendant advisor paid subadvisors to do substantially all of the investment management services for a third or less of the fee paid by the mutual fund. *Id.* at *3. Although the defendant advisor countered that it performed extensive services that were not delegated to the subadvisor, the court found that the defendant's argument was more appropriately addressed at summary judgment and that the plaintiff had adequately alleged that the fee was excessive. *Id.*; *see also Am. Chem.*, 2014 WL 5426908, at *7 (finding specific allegations about defendants' practices regarding subadvisors, nature of services, economies of scale, and independence of the board sufficient to survive motion to dismiss); *Millenco*, 2002 WL 31051604, at *3 (finding allegations that advisor had "very little to do" because it subcontracted with another advisor along with other allegations sufficient to survive motion to dismiss).

*Id.* at *3. Such analysis is instructive here.

Plaintiffs have pled a notable disparity in the fees obtained for servicing the three funds with which they are involved and the subadvised funds, while concurrently pleading that the services provided to and resources involved in all of the funds are substantially the same. This latter point is important because it is the work done and not the label given to the work that will

7

likely and ultimately prove dispositive of Plaintiffs' claims.  The prospectus disclosures and involvement by the same portfolio managers and investment professionals support the similarity allegations.

Plaintiffs have also pled that the lower fees for the subadvised funds were an outgrowth of arm's-length negotiations while attacking the negotiations and oversight of the fees for the three funds.  Although the complaint contains relatively few details regarding the level of oversight afforded the approved fee rates, factual allegations of rubber-stamping for an affiliated fund are there.  The allegations of a flawed negotiation or oversight process would inform the amount of deference given to the board's approval and consideration of all of the relevant factors that will decide the merits of the claims involved.  In other words, the three counts survive here even if it is debatable whether the complaint sets forth allegations of board failure that could not by themselves support plausible claims.

Defendant offers as an explanation for the fee arrangements that it has a more limited role in servicing the subadvised funds, but this is essentially an evidence-dependent contention that cannot be afforded dispositive force in today's motion-to-dismiss context.  The inquiry is not whether Plaintiffs have pled factual allegations addressing all or even most of the *Gartenberg* factors or whether Plaintiffs have disclosed all of the details behind their factual allegations.  Instead, the issue is whether, taken as a whole, Plaintiffs' complaint pleads sufficient facts about the fees paid to Defendant and their relationship to the services rendered to present a plausible claim that the fees are disproportionately large.  Although perhaps a close call in some respects, the facts pled present inferences that meet this standard.

Of course, this does not mean that Defendant's arguments as to why its fees are not

excessive are meritless. Rather, the point is that these arguments are more appropriate for summary judgment where, for example, evidence may fully explain why the fees Defendant earns as an investment adviser justifiably exceed the fees it earns as a subadviser. The Court therefore expresses no opinion here on whether Plaintiffs will be able to produce evidence to meet the notably high standard for imposition of § 36(b) liability.

One last issue is left for disposition. All three counts state that Plaintiffs seek as an alternative form of relief rescission of the IAA and restitution pursuant to 15 U.S.C. § 80a-46. In its briefing, Defendant states that, to the extent that Plaintiffs are attempting to asserts separate claims for relief for violations of § 47(b) of the ICA, they cannot do so. The Court does not read the complaint to assert such separate claims, and in their memorandum in opposition, Plaintiffs state that they are not seeking to assert separate claims under § 47(b). Rather, Plaintiffs explain that they are seeking rescission as a remedy in connection with their § 36(b) claims. The parties debate whether such rescission is available as a remedy in this context, and courts disagree on the issue. *See Zehrer*, 2014 WL 6478054, at *4 (discussing split in authority).

This Court need not decide at this juncture whether rescission under § 47(b) falls within the scope of available remedies because a Rule 12(b)(6) motion properly targets claims, not remedies.[1] *See Rodriguez v. Serv. Emps. Int'l*, 755 F. Supp. 2d 1033, 1053 (N.D. Cal. 2010) ("Defendant does not . . . cite authority addressing whether it is appropriate to dismiss a complaint under Rule 12(b)(6) on the basis that the remedies sought in it are unavailable. The Court concludes that it is not, so long as some relief is available."); *Summit Tech., Inc. v. High-*

---

[1] Defendant also raises the issue of whether Plaintiffs can obtain the jury trial they demand on § 36(b) claims. The Court expresses no opinion here on this issue, which falls outside today's Rule 12(b)(6) inquiry.

Case: 2:14-cv-00414-GLF-NMK Doc #: 40 Filed: 03/04/15 Page: 10 of 10  PAGEID #: 432

*Line Med. Instruments, Co.*, 933 F. Supp. 918, 927-28 (C.D. Cal. 1996) ("Lastly, a Rule 12(b)(6) motion 'will not be granted merely because [a] plaintiff requests a remedy to which he or she is not entitled.' 'It need not appear that plaintiff can obtain the *specific* relief demanded as long as the court can ascertain from the face of the complaint that *some* relief can be granted.' " (citations omitted)).  The claims survive here, and the issue of remedies is left for another day.

### III. Conclusion

The Court **DENIES** Defendant's motion to dismiss.  (ECF No. 13.)

**IT IS SO ORDERED.**

    /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE