UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Nancy Goodman and Jacqueline Peiffer, | : | |
| | : | Civil No. 2:14 CV-414 |
| Plaintiffs, | : | |
| v. | : | Judge Frost |
| | : | |
| J.P. Morgan Investment Management, Inc., | : | Magistrate Judge King |
| | : | |
| Defendant. | : | |

### DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION
### FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

More than six months after the Court's deadline to amend the pleadings has passed, and less than four months before the close of fact discovery, Plaintiffs have moved to amend their Complaint to add two new defendants and three new claims against those new defendants. That motion should be denied for multiple reasons.

First, the August 6, 2014 Preliminary Pretrial Order (the "PPO") expressly provides that motions to amend the pleadings had to be filed by April 6, 2015, and Plaintiffs have no good cause to ignore that deadline. Second, permitting an amendment now would greatly prejudice defendant J.P. Morgan Investment Management, Inc. ("JPMIM") and the two newly-proposed defendants. Discovery relating to the new claims and new defendants would require collecting and searching hundreds of thousands of additional documents from new and existing custodians and making new witnesses available for deposition. JPMIM and the two new entities could not possibly accomplish this before fact discovery closes on February 5, 2015. And third, the motion is futile because the new claims fail to state a claim against either of the two newly-proposed defendants.

ACTIVE/84061124.21

**BACKGROUND**

A.     The Proposed First Amended Complaint

Plaintiffs' proposed First Amended Complaint (the "Proposed Complaint") would add two new defendants and assert three new claims against them based on agreements that were never mentioned in the existing Complaint.  Those new claims would cover a different, later damages period than the claims in the existing Complaint.

Plaintiffs filed their existing Complaint in May 2014.  It alleged that JPMIM breached its fiduciary duties under Section 36(b) of the Investment Company Act of 1940 (the "ICA") by charging "excessive" fees to three fixed-income funds (the "Funds") that it manages.  The contractual relationship between JPMIM and the Funds is governed by an Investment Advisory Agreement (the "Advisory Agreement").  Plaintiffs' theory is that the fees JPMIM charges the Funds are excessive because they are higher than the fees that JPMIM charges for providing subadvisory services to mutual funds that it does not manage (the "Sub-Advised Funds").  *See* Complaint ¶¶ 1-11; *see also* March 4, 2015 Opinion & Order on Motion to Dismiss (Doc. No. 40) at 4-6.

Plaintiffs now seek to sue, in addition to JPMIM, two affiliated entities: JPMorgan Funds Management, Inc. (the "Administrator") and JPMorgan Chase Bank, N.A. (the "Sub-administrator").  The Administrator provides administrative services to the Funds pursuant to an "Administration Agreement" that requires the Funds to pay fees to the Administrator.  *See* Proposed Complaint ¶ 118.  The Administrator has, in turn, entered into a contract (the "Sub-administration Agreement") pursuant to which the Sub-administrator provides certain services to the Funds on behalf of the Administrator.  The Administrator pays the Sub-administrator for providing those services.  *See* Proposed Complaint ¶¶ 12, 120.  The Proposed Complaint does

2

not—and cannot—allege that the Funds pay any fees directly to the Sub-administrator for those services.

Plaintiffs allege in new Counts IV, V, and VI of the Proposed Complaint that (i) the fees the Funds pay the Administrator under the Administration Agreement are "excessive" in violation of Section 36(b) when compared to administrative fees paid by other funds that JPMIM does not manage, and (ii) the fees the Sub-Administrator receives from the Administrator also are excessive in violation of Section 36(b).  *See* Proposed Complaint ¶¶ 209-235.  These claims are entirely new.  Although the Administration Agreement's and the Sub-administration Agreement's existence and fees have been a matter of public record for years, the existing Complaint does not mention the Administration Agreement, the Sub-administrative Agreement, the Administrator, or the Sub-administrator.

The Proposed Complaint's claims against the Administrator and the Sub-administrator would cover a different damages period than the claims against JPMIM in the existing Complaint.  Section 36(b) of the ICA provides that "[n]o award of damages shall be recoverable for any period prior to one year before the action was instituted."  15 U.S.C. § 80a-35(b)(3).  The existing Complaint against the Adviser was filed in May 2014, and covers the period from May 2013 through May 2015.[1]  In contrast, if the Proposed Complaint were filed this month, the new claims against the new defendants would seek damages from November 2014 through November 2015.[2]

---

[1] Although the statute limits damages to the one year preceding the filing of a complaint, on May 6, 2015, the Court entered a stipulated order extending the damages period for the existing complaint to May 6, 2015 to avoid Plaintiffs having to file an "anniversary complaint" to cover the one-year period after the filing of the Complaint. *See* Agreed Order, Doc. No. 47 (May 6, 2015).

[2] Federal Rule of Civil Procedure 15(c)(1) permits certain claims in an amended complaint to "relate back" to the filing of the original complaint under limited circumstances, but new claims against new defendants fall well outside that narrow exception.  *See* Fed. R. Civ. P. 15(c)(1).

3

B.      **The Preliminary Pretrial Order and Scheduling Order**

The PPO (Doc. No. 21) provides, among other things, that:

- "Motions or stipulations for leave to amend the pleadings may be filed no more than thirty (30) days after resolution of the pending motion to dismiss, unless otherwise ordered by the Court";

- "All non-expert discovery must be completed by February 5, 2016";

- "All expert discovery must be completed no later than July 15, 2016"; and

- "[D]iscovery will proceed during the pendency of any . . . dispositive motion."

PPO at 2, 3.  The Scheduling Order (Doc. No. 22), issued the day after the PPO, requires "all dispositive motions" to be filed by "August 15, 2016, and sets trial for "February 27, 2017."

On March 4, 2015, the Court denied JPMIM's motion to dismiss the complaint. Doc. No. 40.  Under the PPO, any motion to amend therefore was due no later than April 6, 2015.

C.      **Discovery Since the Preliminary Pretrial Conference**

Following the Preliminary Pretrial Conference on August 6, 2014, the parties exchanged Rule 26(a)(1) disclosures.  As part of its initial disclosures, JPMIM also produced thousands of pages of documents to Plaintiffs concerning the review and approval by the Funds' Board of Trustees of the fees at issue.  Plaintiffs did not serve their first discovery requests on JPMIM until May 7, 2015—nine months after the Preliminary Pretrial Conference and just eight months before the close of fact discovery.  Those requests asked for 54 categories of documents. Following a series of meet and confers in May and June of 2015 to clarify and narrow the scope of most of Plaintiffs' requests, JPMIM collected over 3.5 million unique documents, including electronically stored information ("ESI") from 15 agreed-upon custodians and from relevant computer networks and shared drives.  JPMIM has been producing documents on a rolling basis, and, to date, has produced over 69,000 pages of discovery.  Although this has been a

4

burdensome, expensive, and time-consuming process, JPMIM anticipates completing production of responsive documents relevant to the current claims in the case before the fact discovery cut-off.

## ARGUMENT

### I. Plaintiffs Fail To Demonstrate Good Cause For Amending The Preliminary Pretrial Order.

Plaintiffs' assertion that "the proposed amendment to the Complaint is timely pursuant to the Preliminary Pretrial Order" (at 7) is flatly contradicted by the PPO itself. The PPO expressly required that all "[m]otions . . . for leave to amend the pleadings may be filed no more than thirty (30) days after resolution of the pending motion to dismiss, unless otherwise ordered by the Court." PPO at 2. The Court decided the motion to dismiss on March 4, 2015. Plaintiffs' deadline to amend was therefore April 6, 2015. Under the terms of the Court's Order, Plaintiffs' motion is untimely and should be denied.

Plaintiffs' contention that the April 6, 2015 deadline was intended only to apply to amendments "that might be necessary as a result of the Court's ruling on the Motion to Dismiss" (at 7) is contradicted by Rule 16 itself. Rule 16 expressly requires that "[t]he scheduling order *must* limit the time to . . . amend the pleadings." Fed. R. Civ. P. 16(b)(3)(A) (emphasis added). If Plaintiffs' theory were correct, then the PPO would impose no deadline for amending pleadings unrelated to the Motion to Dismiss.

Rule 16 further provides that the "schedule may be modified only for good cause." Fed. R. Civ. P. 16(b)(4). The Local Rules likewise expressly state that a Magistrate Judge may "modify scheduling orders" only "upon a showing of good cause." Local Rule 16.2. "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Dominion Transmission, Inc. v.*

5

*Detweiler*, No. 2:11-cv-836, 2013 WL 941314, at *2 (S.D. Ohio Mar. 11, 2013). "[A] court choosing to modify the schedule upon a showing of good cause, may do so only if it cannot reasonably be met despite the diligence of the party seeking the extension." *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) (internal punctuation omitted).

Plaintiffs have not shown good cause here. Plaintiffs concede (at 8) that they "previously considered claims for excessive administration fees" long before filing the current motion. The existence of the Administration Agreement, the Sub-administration Agreement, and the services provided and fees paid under those agreements have been a matter of public record for years before the existing Complaint was filed. This information is disclosed in the Funds' registration statements and annual reports, which are publicly filed with the Securities and Exchange Commission. Indeed, the Plaintiffs acknowledge in the introductory paragraph of the existing Complaint that they had already consulted that source of information.[3]

Plaintiffs contend (at 8) that "the need to assert" the new claims "did not become evident until May 8, 2015, when Defendants disclosed alterations to the application of certain [fee] waivers." Even if one accepts at face value Plaintiffs' contention, that means Plaintiffs waited more than five months before seeking leave to amend. That delay is fatal. For example, a court in this District recently denied a motion to amend after the plaintiff waited five *weeks* after discovery of new claims to seek leave to amend. *Jules v. Police Dep't Village of Obetz*, No. 2:11-cv-582, 2013 WL 526441, at *3 (S.D. Ohio Feb. 11, 2013). In another instance, a court in this District observed that the plaintiff's argument—that deposition testimony had revealed the

---

[3] Nor is amendment necessary for the Court to take into account the Administration Agreement and Sub-administration Agreement when considering the merits of Plaintiffs' existing claims. It is well established that courts should consider services provided by affiliates of the adviser in evaluating fees under Section 36(b); to do otherwise "would be to exalt form over substance and disregard the expressed Congressional intent that 'all the facts in connection with the determination and receipt of such compensation' be considered." *Gartenberg v. MLAM*, 694 F.2d 923, 930-31 (2d Cir. 1982).

6

need for amendment—was "greatly diminished by the fact that they waited more than six months after obtaining this evidence before seeking leave to amend." *Wagner v. Mastiffs*, No. 2:08-cv-431, 2011 WL 124226, at *4 (S.D. Ohio Jan. 14, 2011).

## II. Adding New Parties and New Claims Just Three Months Before Fact Discovery Ends Would Prejudice JPMIM And The Proposed New Defendants.

JPMIM has expended substantial time, effort, and resources to comply with its discovery obligations within the PPO's discovery deadline. If the Complaint were amended now to add new claims against new defendants with just three months remaining before fact discovery closes, the discovery deadlines would have to be extended. Neither JPMIM nor the two new defendants would have sufficient time under the current schedule to respond to additional discovery requests relating to the new claims and new defendants. Under similar circumstances, a court in this District denied a motion to amend to add new defendants because "the new [d]efendants would have an interest in, and would no doubt require, time to engage in discovery and to prepare their defenses," which would "lead to significant delay to the case schedule." *OP Therapy, LLC v. Bryant Health Center, Inc.*, No. 2:10-cv-635, 2012 WL 139297, at *3 (S.D. Ohio Jan. 18, 2012).

If Plaintiffs were granted leave to file their Proposed Complaint, they would presumably serve discovery requests on the new defendants. The new defendants would have to identify custodians likely to have relevant documents, including ESI, collect their documents, and search and review them to produce responsive documents. Plaintiffs would also presumably seek to depose new fact witnesses relating to the claims against the new defendants. None of this could be completed in *six* months, let alone the three months remaining in the current schedule.

Nor could JPMIM itself comply with its discovery obligations under the current schedule if the motion were granted because the Proposed Complaint would cover a new damages period.

7

JPMIM collected documents relevant to the claims in the Complaint over the summer of 2015. JPMIM did not collect documents generated after May 2015, because the parties' stipulated damages period under the existing Complaint did not cover a later period.  The Proposed Complaint, however, would seek damages through November 2015.  JPMIM thus would need to collect, review and produce additional documents for the period May through November of 2015.  Collecting documents from custodians the first time took several months.  Collecting them again likely would take a similar amount of time, after which they would need to be reviewed and responsive documents produced.  And Plaintiffs may seek to re-depose witnesses they have already deposed to question those witnesses about the later period and about documents from that period.  All of this could not be completed by the February 5, 2016 fact discovery deadline.

**III.    Amendment Would Be Futile Because The Proposed Complaint Would Fail To State A Claim Against The New Defendants.**

The motion should also be denied for a third reason: the new claims in the Proposed Complaint fail to state a claim against the proposed new defendants, the Administrator and Sub-administrator.  Although JPMIM does not speak for the Administrator and Sub-administrator, and those entities are not currently before the Court, if the motion were granted, the new defendants would have the right to move to dismiss the claims against them.  Accordingly, the amendment would be futile.  *See, e.g.*, *Corbett v. Beneficial Ohio, Inc.*, 847 F. Supp. 2d 1019, 1028 (S.D. Ohio 2012).

For this same reason, Plaintiffs' contention (at 3) that permitting amendment "favors judicial economy" because "Plaintiffs could file a separate complaint . . . against the Administrator Defendants" is wrong.  If Plaintiffs filed a separate complaint against the Administrator and Sub-administrator, those defendants presumably would move to dismiss that new complaint as well.

### A. The Proposed Complaint Fails to State A Claim Against the Sub-administrator.

Section 36(b) allows a mutual fund shareholder to seek the disgorgement of excessive fees paid by the fund, but that cause of action comes with a fundamental limitation: the shareholder may only bring that claim against the entity to which the fund paid those allegedly excessive fees. The Proposed Complaint does not—and cannot—allege that the Funds have paid the Sub-administrator any administration (or sub-administration) fees. Rather than allege that the Funds pay the Sub-administrator, the Proposed Complaint alleges only that the Sub-administrator indirectly "receives *a portion* of the administration fees *paid to JPMFM [the Administrator]* by the Funds." Proposed Complaint ¶ 120 (emphasis added).

Section 36(b) expressly prohibits an action against anyone other than the recipient of "compensation . . . paid by [the] registered investment company." The statute provides that "[n]o such action shall be brought or maintained against any person other than the recipient of such compensation ..., and no damages or other relief shall be granted against any person other than the recipient of such compensation." 15 U.S.C. § 80a-35(b)(3). Thus, "damages may be recovered only against the *recipient* of the compensation." *Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 413 (2d Cir. 1989) (emphasis added); *accord Laborers' Local 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 405 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 1500 (2015).

Plaintiffs cannot circumvent Section 36(b)'s statutory limitation by alleging that the Sub-Administrator *indirectly* received administration fees. "Allowing Plaintiff to maintain an action against" an affiliate "on the theory that it was an indirect recipient of the . . . fees would abrogate the limitation imposed by [ICA] § 36(b)(3), and thwart Congress's judgment concerning the appropriate remedy for violations of § 36." *Zucker ex rel. AIM Small Cap Growth Fund/A v. AIM Advisors, Inc.*, 371 F. Supp. 2d 845, 849 (S.D. Tex. 2005).

9

### B. The Proposed Amended Complaint Fails to State a Claim Against the Administrator.

The Proposed Complaint also fails to state a plausible claim against the Administrator. The premise of the Proposed Complaint's claims against the Administrator is that the Administrator charges the Funds higher fees than administrative fees that the *Sub-administrator* charges to unaffiliated funds. But a comparison of the services described in the Administrator's contract with the Funds to the services described in the Sub-administrator's contracts with unaffiliated funds shows that the services are different. The fact that the Sub-administrator charges unaffiliated funds different fees to perform different services does not plausibly suggest that the Administrator's fees are excessive. Accordingly, if the Proposed Complaint were filed, the Administrator would have compelling grounds for dismissal of the claims against it.

As the Supreme Court has explained, a "claim has facial plausibility" only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The differences between the services under the agreements the Proposed Complaint itself relies upon means that a court can draw no "reasonable inference" about the different fees charged, other than that different services merit different fees. The Administrator therefore could argue successfully that the Proposed Complaint's claims against the Administrator should be dismissed. Amendment to permit those claims would be futile.

### CONCLUSION

For the foregoing reasons, defendant JPMIM respectfully requests that the Court deny the Motion for Leave to File First Amended Complaint.

10

|  |  |
|---|---|
|  | Respectfully submitted, |
|  |  |
|  | /s/ Steven W. Tigges |
| Mark Holland (*pro hac vice*) | Steven W. Tigges (0019288), Trial Attorney |
| GOODWIN PROCTER LLP | Bradley T. Ferrell (0070965) |
| The New York Times Building | ZEIGER, TIGGES & LITTLE LLP |
| 620 Eighth Avenue | 41 South High Street |
| New York, NY 10018 | 3500 Huntington Center |
| Tel:   (212) 813-8800 | Columbus, OH 43215 |
| Fax:   (212) 355-3333 | Tel:   (614) 365-9900 |
| Email:  mholland@goodwinprocter.com | Fax:   (614) 365-7900 |
|  | Email:  tigges@liothio.com |
| Michael K. Isenman (*pro hac vice*) |         ferrel@lithio.com |
| GOODWIN PROCTER LLP |  |
| 901 New York Ave NW | *Attorneys for Defendant JP Morgan Investment Management, Inc.* |
| Washington, DC 20001 |  |
| Tel:   (202) 346-4000 |  |
| Fax:   (202) 346-4444 |  |
| Email:  misenman@goodwinprocter.com |  |

Dated:  November 9, 2015

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of November, 2015, I have caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing ("NEF") to the following:

> David P. Meyer
> Matthew R. Wilson
> Michael J. Boyle, Jr.
> MEYER WILSON CO., LPA
> 1320 Dublin Road, Suite 100
> Columbus, OH 43215
>
> Andrew W. Robertson
> Robin F. Zwerling
> Jeffrey C. Zwerling
> Susan Salvetti
> ZWERLING, SCHACHTER & ZWERLING, LLP
> 41 Madison Avenue
> New York, NY 10010
>
> Stephen J. Oddo
> Jenny L. Dixon
> Daniel L. Sachs
> ROBBINS ARROYO LLP
> 600 B Street, Suite 1900
> San Diego, CA 92101

        /s/ Steven W. Tigges