**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**NANCY GOODMAN, et al.,**

      **Plaintiffs,**

            **v.**

**J.P. MORGAN INVESTMENT**
**MANAGEMENT, INC.,**

      **Defendant.**

                    **Case No. 2:14-cv-414**
                    **JUDGE GREGORY L. FROST**
                    **Magistrate Judge Norah McCann King**

**CAMPBELL FAMILY TRUST, et al.,**

      **Plaintiffs,**

            **v.**

**J.P. MORGAN INVESTMENT**
**MANAGEMENT, INC., et al.,**

      **Defendants.**

                    **Case No. 2:15-cv-2923**
                    **JUDGE GREGORY L. FROST**
                    **Magistrate Judge Norah McCann King**

**OPINION AND ORDER**

      This matter is before the Court for consideration of the following filings: a motion to

dismiss (ECF No. 32) filed by Defendants JPMorgan Funds Management, Inc. and JPMorgan

Chase Bank, N.A.; a memorandum in opposition (ECF No. 37) filed by Plaintiffs; and a reply

memorandum (ECF No. 38) filed by Defendants JPMorgan Funds Management, Inc. and

JPMorgan Chase Bank, N.A..[1]  For the reasons that follow, the Court **GRANTS IN PART** and

---

      [1]  Unless otherwise noted, all references to docket numbers in this Opinion and Order are

**DENIES IN PART** the motion to dismiss.

## I.    Background

According to the complaint filed in Case No. 2:15-cv-2923, Plaintiffs—Campbell Family Trust, Jack Hornstein, Anne H. Bradley, Casey Leblanc, Jacqueline Peiffer, Joseph Lipovich, and Valderrama Family Trust—are all shareholders in one or more of the five mutual funds involved in this case ("the funds").[2]  The funds are: (1) the JPMorgan Mid Cap Value Fund ("Mid Cap Value Fund"), (2) the JPMorgan Large Cap Growth Fund ("Large Cap Growth Fund"), (3) the JPMorgan Value Advantage Fund ("Value Advantage Fund"), (4) the JPMorgan Strategic Income Opportunities Fund ("Strategic Income Opportunities Fund"), and (5) the JPMorgan US Equity Fund ("US Equity Fund").  For present purposes, these funds can be broadly described as organized into trusts compromised of numerous mutual funds.  The funds pool money from different investors, and the pooled money is then invested in a portfolio of securities.

Operation of the funds is wholly conducted by external service providers selected by each fund's Board of Trustees.  Pursuant to contractual arrangement, established by an Administration Agreement for each fund, Defendants manage the funds' portfolio of securities.  From their assets, the funds in turn pay Defendants an annual fee for providing these services.  The service providers here are Defendant J.P. Morgan Investment Management, Inc. ("JPMIM"), the investment adviser to the Mid Cap Value Fund, the Large Cap Growth Fund, and the Value

---

to documents filed in Case No. 2:15-cv-2923.
　　[2]   The five funds involved in Case No. 2:15-cv-2923 are not the same funds involved in Case No. 2:14-cv-414.  For ease of discussion, the Court shall use "this case" and similar terms herein as referring to Case No. 2:15-cv-2923 unless otherwise specified.

Advantage Fund.  Defendant JPMorgan Funds Management, Inc. ("JPMFM") is a JPMIM affiliate that serves as the administrator to all of the foregoing five funds and receives an annual fee for providing these services.  Finally, Defendant JPMorgan Chase Bank, N.A. ("JPMCB"), another affiliate of JPMIM, is the sub-administrator of the funds and receives a portion of the administration fees that JPMFM receives.

In an eight-count complaint, Plaintiffs allege the fees charged by Defendants with respect to each fund breached a fiduciary duty created under the Investment Company Act of 1940 ("ICA"), 15 U.S.C. § 80a-1 *et seq.*  The crux of the five counts relevant to today's decision is that JPMFM has charged the funds greater advisory and administrative fees than other, unaffiliated mutual funds where rates were negotiated at arm's length and that JPMCB receives a portion of the inflated fees paid to JPMFM.  Plaintiffs also allege that JPMFM and JPMCB provide services that overlap with some services also provided to the funds by other entities (some of which are JPMFM affiliates) so that the funds are paying duplicative fees for select services.  Plaintiffs allege that as a direct, proximate, and foreseeable result of the conduct of JPMFM and JPMCB, the funds sustained millions of dollars in damages for excessive or duplicative fees.

Each of the complaint counts at issue here targets an individual fund and sets forth the purported overcharging.  The overcharging is pled by comparing the fees paid under the five affiliated funds' actual agreements and the fees that would be paid under two different agreements for similar but unaffiliated funds.  Purportedly, the services provided to all of the affiliated and unaffiliated funds are essentially the same so that any *de minimis* variations in service cannot explain away the fee differences.  Additionally, Plaintiffs allege that comparing

3

the fee rates charged to unaffiliated funds by other administrators, specifically State Street Bank & Trust Company ("State Street") and U.S. Bancorp Fund Services, LLC ("US Bank"), indicates that the JPMorgan administrative fees are higher than the fees charged by these other administrators.

In Count IV of the complaint, Plaintiffs target the Mid Cap Value Fund and allege that the effective net administration fee rate for this fund is 0.055%, which amounted to administration fees of $8,795,000 for the most recent fiscal year.  Plaintiffs allege that this constitutes $8,109,000 in greater fees than those that would be charged under the agreement terms given to ProShares Funds, an unaffiliated fund, and $7,106,000 in greater fees than those that would be charged under the agreement terms given to EQ Funds, another unaffiliated fund. Plaintiffs also allege that this constitutes $7,202,000 in greater fees than those that would be charged by State Street and $6,486,000 in greater fees than those that would be charged by US Bank.

In Count V, Plaintiffs make similar allegation regarding the Large Cap Growth Fund, alleging that the effective fee rate was 0.082%, which amounted to $12,653,000 in fees for the most recent fiscal year.  Plaintiffs allege that this constitutes $11,980,000 in greater fees than those that would be charged under the ProShares Funds' agreement terms and $11,004,000 in greater fees than those that would be charged under the EQ Funds' agreement terms.  Plaintiffs also allege that this constitutes $11,115,000 in greater fees than those that would be charged by State Street and $10,422,000 in greater fees than those that would be charged by US Bank.

In Count VI, Plaintiffs target the Value Advantage Fund, alleging that the effective fee rate for this fund is 0.063%, which amounted to $6,136,000 in fees for the most recent fiscal

year. Plaintiffs allege that this constitutes $5,606,000 in greater fees than those that would be charged under the ProShares Funds' agreement terms and $4,830,000 in greater fees than those that would be charged under the EQ Funds' agreement terms. Plaintiffs also allege that this constitutes $5,167,000 in greater fees than those that would be charged by State Street and $4,731,000 in greater fees than those that would be charged by US Bank.

In Count VII, Plaintiffs target the Strategic Income Opportunities Fund, alleging that the effective fee rate was 0.053%, which amounted to $13,701,000 in fees for the most recent fiscal year. Plaintiffs allege that this constitutes $12,771,000 in greater fees than those that would be charged under the ProShares Funds' agreement terms and $11,280,000 in greater fees than those that would be charged under the EQ Funds' agreement terms. Plaintiffs also allege that this constitutes $11,133,000 in greater fees than those that would be charged by State Street and $9,977,000 in greater fees than those that would be charged by US Bank.

In Count VIII, Plaintiffs target the US Equity Fund, alleging that the effective fee rate was 0.081%, which amounted to $9,762,000 in fees for the most recent fiscal year. Plaintiffs allege that this constitutes $9,172,000 in greater fees than those that would be charged under the ProShares Funds' agreement terms and $8,309,000 in greater fees than those that would be charged under the EQ Funds' agreement terms. Plaintiffs also allege that this constitutes $8,554,000 in greater fees than those that would be charged by State Street and $8,011,000 in greater fees than those that would be charged by US Bank.

Counts IV through VIII also incorporate the allegation that the five funds paid in fiscal year 2015 a combined amount of $71,934,000 in duplicative servicing fees (covering numerous administrative services). These five counts further incorporate the allegation that the five funds

paid in fiscal year 2015 a combined amount of $51,379,000 in duplicative transfer agency fees (covering the preparation and mailing of various reports and information).

Finally, Plaintiffs allege that the fees Defendants charge were not negotiated at arm's length.  Plaintiffs allege that there was no negotiation when the Board approved each fund's IAA.  They also allege that the Board failed to solicit proposals from other advisors and failed to seek and obtain an IAA provision that would have each of the fee rates be at least as favorable to the fund as the lowest rate paid by Defendants' other clients for the same of substantially the same services.

Defendants JPMFM and JPMCB have filed a motion to dismiss Counts IV, V, VI, VII, and VIII pursuant to Federal Rule of Civil Procedure 12(b)(6).[3]  (ECF No. 32.)  The parties have completed briefing on the motion to dismiss, which is ripe for disposition.

## II.      Discussion

### A.      Standard Involved

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper if a complaint fails to state a claim upon which the Court can grant relief.  Consequently, this Court must construe Plaintiff's complaint in his favor, accept the factual allegations contained in that pleading as true, and determine whether the factual allegations present plausible claims.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  The United States Supreme Court has explained, however, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[3]  Defendant JPMIM has filed an answer to Counts I, II, and III, to the three counts asserted against it.  (ECF No. 31.)  JPMIM is not a party to the motion to dismiss.

678 (2009).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Consequently, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

To be considered plausible, a claim must be more than merely conceivable.  *Twombly*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  What this means is that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555.  *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

### B.      Analysis

The United States Supreme Court has explained that "to face liability under § 36(b), an investment adviser must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining."  *Jones v. Harris Assocs., L.P.*, 559 U.S. 335, 346 (2010).  This inquiry entails examining all pertinent facts, including the "*Gartenberg* factors":

> (1) the nature and quality of the services provided to the fund and shareholders;
> (2) the profitability of the fund to the adviser; (3) any "fall-out benefits," those
> collateral benefits that accrue to the adviser because of its relationship with the
> mutual fund; (4) comparative fee structure (meaning a comparison of the fees
> with those paid by similar funds); and (5) the independence, expertise, care, and
> conscientiousness of the board in evaluating adviser compensation.

*Id.* at 344 n.5.  These factors inform review of Plaintiffs' pleading.

### 1.  *Claims against JPMCB*

Plaintiffs assert claims against the sub-administrator, JPMCB, under Section 36(b) of the

ICA, which provides:

> [T]he investment adviser of a registered investment company shall be deemed to
> have a fiduciary duty with respect to the receipt of compensation for services, or
> of payments of a material nature, paid by such registered investment company, or
> by the security holders thereof, to such investment adviser or any affiliated person
> of such investment adviser.

15 U.S.C. § 80a-35(b).  The statutory scheme then provides for a federal claim by shareholders

against an investment adviser for breach of fiduciary duty in regard to the compensation or

payments paid to the investment adviser:

> An action may be brought under this subsection . . . by a security holder of such
> registered investment company on behalf of such company, against such
> investment adviser, or any affiliated person of such investment adviser, or any
> other person enumerated in subsection (a) of this section who has a fiduciary duty
> concerning such compensation or payments, for breach of fiduciary duty in
> respect of such compensation or payments paid by such registered investment
> company or by the security holders thereof to such investment adviser or person.

*Id.*  Notably, the statute also provides that "[n]o such action shall be brought or maintained

against any person other than the recipient of such compensation or payments, and no damages

or other relief shall be granted against any person other than the recipient of such compensation

or payments."  15 U.S.C. § 80a-35(b)(3).

JPMCB moves for dismissal on the grounds that because § 36(b) does not permit a claim

against any person other than the recipient of advisory fees, Plaintiffs have failed to assert a

claim upon which this Court could grant relief.  JPMCB reasons that because the complaint fails

to allege that the five funds paid JPMCB any administration fees, JPMCB fails to qualify as a recipient.  This contention tracks the complaint's limited factual allegations, which provide that the administrator, JPMFM, contracted with the sub-administrator, JPMCB, to provide some services to the funds.  Through the sub-administration agreement, JPMFM then pays JPMCB a percentage of the money that the funds pay to JPMFM.

Plaintiffs concede that the funds do not pay JPMCB.  Plaintiffs argue, however, that the language and intent of § 36(b) permit a claim against *indirect* recipients of fees, or those entities paid by other entities that the funds pay directly. To support this argument, Plaintiffs direct this Court to the language in § 80a-35(b) providing for an action "against [an] investment advisor, or any affiliated person of such investment adviser."[4]  Plaintiffs also conclude that if JPMCB were not within the scope of § 36(b), it "would enable defendants to avoid liability under § 36(b) by immediately transferring mutual fund fees from the direct recipient to an affiliated entity."  (ECF No. 37, at Page ID # 482.)

_____

[4]  Under the ICA, an "affiliated person" means:

(A) any person directly or indirectly owning, controlling, or holding with power to vote, 5 per centum or more of the outstanding voting securities of such other person; (B) any person 5 per centum or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by such other person; (C) any person directly or indirectly controlling, controlled by, or under common control with, such other person; (D) any officer, director, partner, copartner, or employee of such other person; (E) if such other person is an investment company, any investment adviser thereof or any member of an advisory board thereof; and (F) if such other person is an unincorporated investment company not having a board of directors, the depositor thereof.

15 U.S.C. § 80a-2(a)(3).  The statutory scheme also provides that an " '[a]ffiliated company' means a company which is an affiliated person."  15 U.S.C. § 80a-2(a)(2).

9

This Court agrees with JPMCB.  Plaintiffs' argument asks this Court to read into the statutory scheme more than the plain language of § 80a-35(b) suggests.  Section 80a-35(b)(3) serves to inform the "investment advisor, or any affiliated person of such investment adviser" language of § 80a-35(b).  The "recipient" language means that § 80a-35(b) should be understood to read "investment advisor, or any affiliated person of such investment adviser who received such compensation or payments."

In construing § 80a-35(b), another judge explained:

> The statute does not provide for the recovery of any and all monies from anyone who may have been involved in a breach of fiduciary duty owed to mutual fund investors.  Instead, the statute allows for recovery of advisory compensation from the person or entity who received it.  Where Congress has provided so carefully for one method of enforcement, courts are not lightly to impute another method.

*In re Dreyfus Mut. Funds Fee Litig.*, 428 F. Supp. 2d 342, 351 (W.D. Pa. 2005).  In that case, plaintiffs were attempting to assert a § 36(b) claim against individuals who were directors of nine mutual funds.  *Id.* at 344.  The directors did not receive direct compensation for investment advisor services, but received indirect compensation through the salaries received in their jobs. *Id.* at 351.  There was no allegation that the directors received their compensation for advisory services or that they were affiliated persons in the § 80a-35(b)(3) sense.

*Dreyfus* thus provides only limited help in regard to today's task.  The useful takeaway is recognition that § 80a-35(b) presents a limited claim that does not encompass *all* indirect receipt of compensation, but instead looks for receipt of specific compensation within a requisite relationship.  And the unanswered question is then whether § 80a-35(b) presents a limited claim that encompasses *any* indirect receipt of compensation.  The caveat to applying *Dreyfus* casually

10

to answer that question is that there is no question here that JPMCB is an affiliated entity.  *See Dreyfus*, 428 F. Supp. 2d at 351 ("There are no allegations that the Director Defendants were affiliated persons of the advisors under the statute.").

What matters in this case is that JPMCB is not an affiliated entity that receives direct compensation.  If it were—if, for example, the funds paid JPMCB's percentage in whole or in part directly to JPMCB—then this Court would have no issue with JPMCB falling within the scope of Plaintiffs' § 36(b) claims.  But that is not what Plaintiffs allege happen.  Instead, the funds pay JPMFM and then JPMFM pays JPMCB.  Some courts have credited indirect-recipient § 36(b) claims.  For example, in *Halligan v. Standard & Poor's International, Inc.*, 434 F. Supp. 1082 (E.D. N.Y. 1977), for example, the court denied a motion to dismiss where the complaint plead that "[a]ll of the defendants have directly or indirectly received … compensation or payments" in violation of § 36(b).  To extend the reach of § 36(b) to JPMCB, however, would read out of the statutory scheme any meaning to the language actually employed; such an approach would render the § 80a-35(b)(3) qualification of little point because there would be no limit on the *indirectness* possible to permit a claim.  As long as there was some tangential hook connecting an affiliate's activity to investment advisory services, however attenuated, there would be a possible action against the affiliate.  That may or may not be good policy, but it is not what Congress clearly enacted.

Section 80a-35(b) does not simply provide for a claim against an "investment adviser, or any affiliated person . . . for breach of fiduciary duty in respect of such compensation or payments paid."  Rather, § 80a-35(b) provides for a claim against an "investment adviser, or any

11

affiliated person . . . for breach of fiduciary duty in respect of such compensation or payments paid *by such registered company or by the security holders thereof to such investment adviser or person*." 15 U.S.C. § 80a-35(b) (emphasis added).  The plain language of this portion of the statute establishes the direct relationship: the payor can sue the payee.  The statutory scheme provides for a claim by a security holder that has paid money *to* the investment adviser or *to* the affiliated person.  It does not provide for a claim against a third party based on money paid *to* or *by* a payee that in turn pays the third party.

Other portions of the statute repeat the direct payor-payee relationship.  For example, § 80a-35(b) begins by providing that "the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid *by* such registered investment company, or *by* the security holders thereof, *to* such investment adviser or any affiliated person of such investment adviser." 15 U.S.C. § 80a-35(b) (emphasis added).  The payee owes a fiduciary duty to the payor.

Section 80a-35(b)(3) must be read in conjunction with the statutory language that it informs.  Thus, deleting language not relevant to the present facts, § 80a-35(b) should be understood to read as follows:  an action may be brought under this subsection against such investment advisor or any affiliated person of such investment adviser who received such compensation or payments for breach of fiduciary duty in respect of such compensation or payments paid by such registered company or by the security holders thereof to such investment adviser or person.  This plain-language understanding of the statutory scheme credits the words used, renders no part of the statutory scheme pointless, and effectuates the clear intent of the

12

statutory scheme—to enable those wronged to sue those who owed them a statutorily created fiduciary duty and breached that duty.  This plain-language understanding also entitles JPMCB to dismissal.

The Court **GRANTS** JPMCB's motion to dismiss the claims against it.  (ECF No. 32.)

### 2. *Claims against JPMFM*

The administrator, JPMFM, moves for dismissal on the grounds that the contracts upon which Plaintiffs rely to allege excessive fees actually undercut the contention that the services provided to the five funds and the unaffiliated funds were the same.  JPMFM's premise is that comparison of the contracts governing the affiliated funds to the contracts governing other unaffiliated funds cited in the complaint reveals that the services JPMFM provides to the affiliated and unaffiliated funds are not the same or substantially similar.  According to JPMFM, the services rendered to the affiliated funds are substantially greater than the services rendered to the unaffiliated funds, and more services cost more money.  Therefore, JPMFM reasons, the complaint's allegations of overcharging fail and there is no basis for the § 36(b) claims against the investment advisor.

Plaintiffs disagree.  They argue that the thirteen-page chart that they have attached to the complaint detailing the substantial overlap of dozens of services provided to both the affiliated and unaffiliated funds pleads sufficient facts supporting the overcharging allegations.  Plaintiffs also argue that any differences in services provided to the affiliated funds still fail to account for the higher fees charges to the funds.  In other words, the services are essentially the same, and where they are different, the differences do not justify the purportedly inflated fees.

13

At the heart of the parties' dispute is whether the comparison of services that JPMFM seeks is appropriate for a Rule 12(b)(6) inquiry.  JPMFM argues that it is, asserting that all that is needed is a document-to-document comparison.  Plaintiffs argue that it is not, asserting that the complaint satisfies the requisite notice-pleading standard and that any meaningful comparison of the services offered to the various funds that would result in the disposition of claims is evidence dependent.

A portion of the analysis necessary to resolve the parties' dispute here overlaps with reasoning this Court set forth in the consolidated action, Case No. 2:14-cv-414.  Applying the same core approach, this Court concludes that the complaint's factual allegations are enough to survive the instant motion to dismiss.  This conclusion is informed by guidance from a judicial officer in another § 36(b) case, who correctly recognized:

> Because a claim under § 36(b) need only meet the liberal pleading standards set forth in Rule 8, it is not necessary for a plaintiff to make a conclusive showing of each *Gartenberg* factor to survive a motion to dismiss. But "a § 36(b) complaint is not sufficient if it rests solely on general and conclusory legal assertions that the fees charged were excessive." [*Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 115 (D. Mass. 2006)].  A plaintiff must allege sufficient facts to plausibly support an inference that the advisory fee is so disproportionately large as to bear no reasonable relationship to the services rendered in exchange for the fee.

*Zehrer v. Harbor Capital Advisors, Inc.*, No. 14 C 789, 2014 WL 6478054, at *2-3 (N.D.Ill. Nov. 18, 2014) (most citations omitted).  That same judicial officer went on to explain:

> Courts have required that § 36(b) plaintiffs allege facts supporting the disproportionality of the fees at issue in the suit rather than general facts about the potential for abuse inherent in the system. *See, e.g., Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 343–44 (2d Cir. 2006) (affirming dismissal of § 36(b) claim where the allegations relied on information about the industry rather than allegations "pertinent to th[e] relationship between fees and services") (quoting *Migdal v. Rowe Price–Fleming Int'l*, 248 F.3d 321, 327 (4th Cir. 2001))

14

(internal quotation marks omitted).  If a plaintiff alleges specific facts about the fees paid to the defendant and their relationship to the services rendered, courts have allowed the complaint to survive a motion to dismiss.  For example, in *Kasilag v. Hartford Investment Financial Services, LLC*, No. 11–1083, 2012 WL 6568409 (D.N.J. Dec. 17, 2012), the plaintiff alleged that the defendant advisor paid subadvisors to do substantially all of the investment management services for a third or less of the fee paid by the mutual fund.  *Id.* at *3.  Although the defendant advisor countered that it performed extensive services that were not delegated to the subadvisor, the court found that the defendant's argument was more appropriately addressed at summary judgment and that the plaintiff had adequately alleged that the fee was excessive.  *Id.*; *see also Am. Chem.*, 2014 WL 5426908, at *7 (finding specific allegations about defendants' practices regarding subadvisors, nature of services, economies of scale, and independence of the board sufficient to survive motion to dismiss); *Millenco*, 2002 WL 31051604, at *3 (finding allegations that advisor had "very little to do" because it subcontracted with another advisor along with other allegations sufficient to survive motion to dismiss).

*Id.* at *3.  Despite JPMFM's contrary contention, this analysis is as instructive here as it was in Case No. 2:14-cv-414.

Plaintiffs have pled a notable disparity in the fees obtained for servicing the five affiliated funds compared to the services provided to the unaffiliated funds.  This is important because it is the work done and not the label given to the work that will likely and ultimately prove dispositive of Plaintiffs' claims.  The Court does not even know at this point whether the same labels used in the different agreements necessarily capture the same work.  Also important is the fact that a simple comparison of lists of services  does not provide this Court with sufficient information to say that the fees charged are proportionate or within the range of what would be negotiated at arm's length.  The ICA certainly does not guarantee the funds the best deal possible or even a good deal; instead, it seeks to prevent a deal that falls outside fiduciary responsibilities.  To engage in the consequent inquiry involves assigning the comparison services and fees the

15

weight they are due, a task that depends on evidence and that is ill suited for a decision on a motion to dismiss.

The common-sense approach mandated by *Iqbal* therefore leads this Court to conclude that JPMFM's argument is more appropriate for summary judgment, if not trial.  556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").  Context matters in these types of cases, and simply comparing a laundry list of services does little to inform this Court of the nature of those services and whether different services indeed warrant significantly greater fees.  The Court has before it the framework for a potentially dispositive analysis but not the details that would lead to any particular result.  Thus, the evidence-dependent nature of JPMFM's argument cannot be afforded dispositive force in today's motion-to-dismiss context.

Similar to Case No. 2:14-cv-414, the inquiry is not whether Plaintiffs have pled factual allegations addressing all or even most of the *Gartenberg* factors or whether Plaintiffs have disclosed all of the details behind their factual allegations.  Instead, the issue is whether, taken as a whole, Plaintiffs' complaint pleads sufficient facts about the fees paid to JPMFM and their relationship to the services rendered to present a plausible claim that the fees are disproportionately large.  The facts pled present inferences that meet this standard.

This Court emphasizes that neither side should read into today's decision anything regarding whether the services are the same or substantially the same, or whether different services do or do not justify the greater fees charged.  The Court has no idea at this point.  The curious disparity in fees creates one inference, but it also appears that Plaintiffs have potentially

16

cherry-picked services in assembling their comparison chart and making their related factual allegations.  Subsequent development of these and related points is more appropriate for summary judgment where evidence may fully explain the services involved and the fees charged in context, as opposed to in a vacuum at the Rule 12(b)(6) stage.  The Court expresses no opinion here on whether Plaintiffs will be able to produce evidence to meet the notably high standard for imposition of § 36(b) liability.

The Court **DENIES** JPMFM's motion to dismiss the claims against it.  (ECF No. 32.)

### III.    Conclusion

This Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss. (ECF No. 32.)  The claims against JPMCB are dismissed.  The claims against JPMFM remain pending.

**IT IS SO ORDERED.**

   /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE